GREENLEAF & CROSBY CO., INC., *et al.,* v. D. C. COLEMAN, as Sheriff, *et al.*
158 So. 421.
En Banc.
Opinion Filed December 22, 1934.

*J. Harvey Robillard,* for Appellants;

*Cary D. Landis,* Attorney General, and *H. E. Carter* and *J. V. Keen,* Assistants, for Appellees.

*A. Frank Katzentine, W. Saunders Gramling, Loftin, Stokes & Calkins, Sabel & Reinstine* and *Lambdin & Ramseur,* as *Amici Curiae.*

BUFORD, J.—Appellants exhibited their bill of complaint in the Circuit Court in and for Dade County, Florida, to enjoin and restrain the defendants from enforcing the provisions of Chapter 14528, Laws of Florida, against the complainants and from collecting the tax which was demanded under the provisions of that Act and from levying upon and selling any of the property of the complainants, or interfering in any manner with the complainants in the prosecution of their business for which the license tax was demanded.

A hearing was had after notice and restraining order was granted. Motion to dismiss the bill of complaint was filed, as was also motion to strike parts of the bill of complaint. Thereafter, on the 20th day of July, 1934, the Court made an order as follows:

"This cause coming on this day to be heard upon the joint and several motion to strike certain parts of the bill of complaint and upon the joint and several motion to dismiss the bill of complaint, and the Court having heard argument of counsel for the respective parties, and having considered what order should now be entered herein, the Court finds:

"*First.*—That Chapter 14,528, Laws of Florida, Acts of 1929, is a valid statute and is not in conflict with the Constitution of the United States of America or the Constitution of the State of Florida.

"*Second.*—That said Act does not create an arbitrary or unreasonable classification.

*Third.*—That this Act does not deprive the plaintiffs, or either of them, of their liberty or property without due process of law.

"*Fourth.*—That said Act does not deny to the plaintiffs, or either of them, equality before the law.

"*Fifth.*—That the license taxes fixed by the Act are not

arbitrary or oppressive or unreasonable in amounts, and do not tend to create a monopoly.

"*Sixth.*—The following named plaintiffs under the allegations of the bill of complaint are 'Itinerant Merchants' within the terms of the Act, to-wit: MADAM MOGABGAB; J. & J. SLATER, INC., PECK & PECK, INC., GATTLE'S INC., ANNA McGEE, AGNES DIAMOND, JAY-THORPE, INC., KERGE'S, INC., CHARVIT & FILS., INC., EMILE C. SCHMIDT doing business as E. SCHMIDT & CO., FRANJEAN LINEN CO., INC., SARAH WEINSTOCK, NEVA C. TAYLOR, INC., MILGRIMS, INC.; C. E. STRAUSENBACH, HERMAN GORDON and SIMON WOLFF, partners doing business as GORDON, CESAR SABBAGH, MINNIE CLAPP SCHWARTZ doing business as THE BLUE HAT SHOP, GEORGE FARKAS doing business as HELENA RUBINSTEIN CO., I. MILLER doing business as MIAMI BEACH BOOTERY, CHARLES PELLAR, doing business as PELLAR BERRY, TUNIS & ROSENFELD, LOUIS JURICK doing business as JURICK MODES, DARRAH & DARRAH, FRANK BROTHERS FOOTWEAR, INC., TRABERT & HOFFFER, INC., BOUE SOUERS, INC., and SYLVIA S. HERR doing business as RONEY PLAZA YARN SHOP.

IT IS THEREUPON, UPON CONSIDERATION HEREOF, ORDERED, DECREED AND ADJUDGED AS FOLLOWS:

"*First.*—That because there is equity in the bill of complaint as to the plaintiffs, GREENLEAF & CROSBY CO., INC., NANNETTE E. PAINE, VICTOR REICH, JOHN P. LAWRIE, MINNA LEE, INC., MADELINE FRIEDLEN, doing business as Mountain Home Shop, ADA S. MACCARROLL, PAULINE BURDINE, INC., DI PINNA, a corporation, and ANNE WRIGLEY, the motion to dismiss the bill of complaint be, and the same is hereby denied;

"*Second.*—That the joint and several motions to strike certain parts of the bill of complaint be, and the same is hereby granted except as to the plaintiffs, GREENLEAF &

CROSBY CO., INC., NANNETTE E. PAINE, VICTOR REICH, JOHN P. LAWRIE, MINNA LEE, INC., MADELINE FRIEDLEN, doing business as Mountain Home Shop, ADA S. MACCARROLL, PAULINE BURDINE, INC., DI PINNA, a corporation, and ANNE WRIGLEY, and as to said named defendants the motion be, and the same is hereby denied.

"*Third.*—That the plaintiffs be, and they are hereby severally allowed thirty (30) days from the date of this order to file such amendments to the bill of complaint or other pleadings as they may be advised.

"DONE, ORDERED AND DECREED in Chambers at Miami, Florida, this 20th day of July, A. D. 1934.

"ULY O. THOMPSON,
"*Circuit Judge.*"

From this order appeal was taken.

The two questions for our determination are correctly stated by the appellee as follows:

"Is a person who engages in a seasonal mercantile business in Florida during a certain season or part of the year, and who closes his place of business for the remainder of the year, and who does not leave in his place of business during the time when it is closed, his goods, wares or merchandise, an 'Itinerant Merchant' within the terms of Chapter 14528, Laws of Florida, Acts of 1929?

"Is the classification made by Chapter 14528, Laws of Florida, Acts of 1929, of merchants who severally do a seasonal business in Florida during a certain season of the year and who do not leave their merchandise in their respective places of business during the time they are closed, as 'itinerant merchants,' so arbitrary and unreasonable as to amount to the taking of property without due process of law, or to a denial of the equal protection of the laws in violation of the fourteenth amendment to the Federal Constitution"?

Chapter 14528, Laws of Florida, Acts of 1929, is entitled:
"An Act to Impose Special License Tax Upon the Business Conducted by Itinerant Merchants in the State of Florida and Providing for the Collection of Such Tax and the enforcement of the Same."

Section 1 of the Act defines the term "itinerant merchant" and is as follows:

"That the term 'Itinerant merchant' shall be construed to mean any person who engages in this State in a seasonal business during certain seasons of the year only, of selling or offering for sale goods, wares or merchandise, but shall not apply to merchants having a permanent place of business in this State throughout the year who engage in business therein only for a portion of the year.

"The term 'Place of Business' as used in this Act shall include all stores and shops of every kind and description, wherein there shall be kept for sale, or to be offered for sale any goods, wares or merchandise or other subjects of bargain whatsoever of portable character.

"The term 'Person' as used in this Act shall be construed and held to mean any individual, association, partnership, corporation or business operated under a declaration of trust in this State."

Section 2 of this Act provides:

"Every person who engages in the business of an itinerant merchant in the State of Florida shall, before engaging in such business, apply for and obtain a license therefor from the State Comptroller, and there shall be and is hereby imposed the following license taxes for the privilege of engaging in the business of itinerant merchant in this State, which license tax shall be collected by the Comptroller of the State of Florida, through the several Tax Collectors of the State in the following amounts, based upon the amount of stock employed in the conduct of the business operated:

"Schedule of License Taxes.

"Stocks up to $100 to $500, License Fee $50.00 annually.

"Stocks up to $500 to $1,000, License Fee $100.00 annually.

"Stocks up to $1,000 to $2,500, License Fee $200.00 annually.

"Stocks up to $2,500 to $5,000, License Fee $350.00 annually.

"Stocks up to $5,000 to $10,000, License Fee $500.00 annually.

"Stocks up to $20,000 to $50,000, License Fee $1,000.00 annually.

"Stocks up to $50,000 to $100,000, License Fee $1,500.00 annually.

"Stocks up to $100,000 to $200,000, License Fee $2,000.00 annually."

Section 4 provides as follows:

"The Comptroller of the State of Florida shall have power to inquire into and determine as a question of fact whether or not any particular person is engaged in the business of itinerant merchant in this State and subject to the provisions of this Act and all determination so made by the Comptroller shall be *prima facie* evidence of the legality, regularity and validity of the findings made and shall be accepted as such in all the courts of the State of Florida."

Section 6 of this Act provides as follows:

"The payment of an itinerant merchant's license under this Act shall operate as an exemption of the person paying the same from any other license imposed upon merchants by the laws of this State, except that counties shall be permitted to levy not exceeding Fifty Per Cent of the amount hereinbefore provided to be paid to the State, which amount shall be and constitute when levied a county license tax

upon said business and shall be issued as other county licenses are now issued according to law."

Section 7 of the Act provides the penalty for noncompliance.

The bill alleges that Greenleaf & Crosby Co., Inc., is a corporation doing business in the State of Florida; has been conducting its business as general merchant for the sale of jewelry, plate and other high class merchandise at its present location at No. 1000 Lincoln Road, Miami Beach, Florida, for the past four years and has been engaged in said business in the State of Florida for the last sixty-five years; that it holds its said storeroom on a five-year lease, pays its rents quarterly, owns its fixtures of a value of upwards of $20,000.00, carries a stock of merchandise of approximately $10,000.00. That it closes its store for a portion of the year and leaves its fixtures and merchandise on the premises.

It alleges that Madam Mogabgab conducts a place of business on Lincoln Road; that she has conducted the same for a period of seven years; has been engaged in like business in the State of Florida for 29 years; that she owns all the fixtures in the store suitable and commensurate with the business conducted therein; that the fixtures are left in the store throughout the year; that she has the store rented for a term of years and intends to continue in business as a merchant.

It alleges that J. & J. Slater, Inc., has been in its present location since December, 1933; has a one-year lease on the premises and has been engaged in the mercantile business in the State of Florida for upwards of 10 years.

It alleges that Peck & Peck, Inc., is a Florida corporation; has been in business at its present location at No. 942 Lincoln Road for seven years; that it has been engaged in the mercantile business in the State of Florida for up-

wards of 10 years and is under lease of its present location for two more years.

It alleges that Gattle's Inc., is a corporation under the laws of the State of Florida; has been in its present location for two years, owns its fixtures and is under lease at present location for a term of years.

It alleges that Anna McGee has been engaged in the mercantile business at her present location No. 101 Lincoln Road for five years and is under a five-year lease at present location; that she owns the fixtures.

It alleges that Agnes Diamond has been engaged in the mercantile business at her present location No. 941 Lincoln Road for the past two years; that she holds the premises under a three-year lease; that she has been engaged in such business in the State of Florida upwards of nine years and owns the fixtures in the premises.

It alleges that Jay-Thorpe, Inc., is a Florida corporation which has been established at its present location, 1026 Lincoln Road, since 1932; is occupying the premises under a lease for a term of years; that it has been engaged in the mercantile business in the State of Florida for a term of upwards of eight years and owns it fixtures.

It alleges that Herge's Inc., is a corporation authorized to do business in the State of Florida; has been engaged in the mercantile business at its present location, No. 915 Lincoln Road, for a period of six years and holds said premises under a five-year lease and owns its fixtures.

It alleges that Charvit & Fils, Inc., is a corporation authorized to do business in Florida; has been at its present location for five years; has been engaged in the mercantile business in the State of Florida for upwards of ten years and holds its store building under a three-year lease, with privilege of renewal, and owns its fixtures.

It alleges that Emile C. Schmidt doing business as E.

Schmidt & Co., has been engaged in the mercantile business at its present location for five years, owns its fixtures and holds the premises under a six-year lease; has been engaged in business in Florida for upwards of 20 years.

It alleges that Franjean Linen Co., Inc., is a corporation authorized to do business in the State of Florida; has been engaged in business at its present location for the last five years and in the State for the past 13 years; it holds its store building under a three-year lease, with privilege of renewal, and owns its fixtures.

It alleges that Nannette E. Paine is a resident of the City of Miami Beach, has been engaged in the mercantile business in the State of Florida for the past nine years; holds a lease on her present location for one year and expects to remain open indefinitely.

It alleges that Victor Reich is, and has been, engaged in a general mercantile and importing business at his present location, 1005 Lincoln Road, for two years and in the State of Florida for 13 years; that he holds these premises under a three-year lease expiring in 1935 and owns the fixtures and leaves his merchandise on the premises throughout the year.

It alleges that Sarah Weinstock has been engaged in the mercantile business at her present location, No. 829 Lincoln Road, for the past four years; has been in said business in the State of Florida five years and owns the fixtures.

It alleges that Neva C. Taylor, Inc., is a Florida Corporation engaged in business at present location, 335 Lincoln Road, for the past two years and in the State of Florida for upwards of five years; that it holds the premises under a five-year lease and owns the fixtures; that the owners of this corporation are citizens and residents of Miami Beach.

It alleges that Milgrim's Inc., is a Florida Corporation

engaged in business at its present location for the past six years and owns its fixtures.

It alleges that C. E. Strausenbach has been engaged in the mercantile business in the present location, 725 Lincoln Road, since December, 1933; has lease on premises for one year and intends to renew the same. He owns the fixtures on said premises and will leave them on the premises throughout the year.

It alleges that Herman Gordan and Simon Wolff are partners doing business as Gordon; have been operating wearing apparel establishment since January 11, 1934, and expect to continue operating same for an indefinite period in the future; that they have a lease for one year, a stock of goods valued at $5,000, and have been engaged in the mercantile business in the State of Florida for over 20 years and own their fixtures.

It alleges that Cesar Sabbagh has been engaged in the mercantile business in the State of Florida for the past 30 years and at present location, 1009 Lincoln Road, for two years; that he holds these premises under a three-year lease, his stock is valued at $5,000 and he owns the fixtures in the building.

It alleges that Minnie Clapp Schwartz doing business at The Blue Hat Shop has been in business at her present location, 839 Lincoln Road, for the past nine years; holds said premises on lease from year to year and owns the fixtures.

It alleges that George Farkas doing business as Helena Rubinstein Co., has been in business at his present location since November, 1933, and holds said premises under lease for one year and owns fixtures.

It alleges that John P. Lawrie has been engaged in the mercantile business at present location since November, 1933, and holds the premises under one-year lease and ex-

·pects to remain open indefinitely; that he owns the fixtures.

It alleges that Minna Lee, Inc., is a corporation authorized to do business in the State of Florida; has been in present location since November, 1933; has been engaged in the mercantile business in Florida for the last five years; holds these premises under one-year lease and expects to remain open indefinitely.

It alleges that I. Miller, doing business as Miami Beach Bootery, has been engaged in the mercantile business at present location since December, 1933, with a stock valued at approximately $2,000.00 and owns its fixtures.

It alleges that Charles Pellar, doing business as Pellar Berry, Tunis & Rosenfeld, Louis Jurick, doing business as Jurick Modes, each engaged in the mercantile business at their present location for the first year with a stock of merchandise of approximate value of $2,000.00 each; they hold their leases to the respective premises under lease from year to year.

It alleges that Darrah & Darrah are partners; have been engaged in the mercantile business in their present location for five years; have been engaged in a similar business in the State of Florida for upwards of 12 years; that they hold their premises under a yearly lease; have a stock of merchandise of approximately $3,000.00 value and own their fixtures.

It alleges that Anne Wrigley has been engaged in business at present location, 1037 Lincoln Road, for the past two years; has been so engaged in the State of Florida for over eight years; that she was open continuously last year and expects to stay open continuously during this year. She owns her fixtures and both fixtures and merchandise remain on premises throughout the year.

It alleges that Frank Brothers Footwear, Inc., a corporation doing business in the State of Florida, has been en-

gaged in the mercantile business at 1006 Lincoln Road for the past four years. It has been so engaged in business in the City of Miami Beach for over eight years; that it holds the premises under a three-year lease, expiring in 1935, and expects to continue as a regularly established merchant on Lincoln Road for an indefinite period in the future. It owns the fixtures.

It alleges that Trabert & Hoeffer, Inc., is a corporation authorized to do business in Florida; has been engaged in its business at present location since January 1, 1934; has been engaged in mercantile business in Florida for more than two years and owns its fixtures.

It alleges that Madeline Freidlen, doing business as Mountain Home Shop, has been engaged in business at present location for one year and in the State of Florida since 1930; that she holds the premises under a one-year lease and expects to remain open indefinitely. She owns the fixtures which she has no intention of removing.

It alleges that Boue Soeurs, Inc., is a corporation authorized to do business in Florida; has been engaged in business at its present location since January 1, 1934; has been engaged in the mercantile business in Florida for two years; holds its premises under a three-year lease and owns the fixtures.

It alleges that Sylvia S. Herr doing business as Roney Plaza Yarn Shop has been engaged in the mercantile business on the Roney Plaza Arcade since November, 1933; that she has said premises under a six-months lease and is negotiating for renewal thereof for five years; she owns her fixtures; that she is buying a home and expects to live permanently in the City of Miami Beach and has no other place of business.

It alleges that Ada S. McCarroll has been engaged in the mercantile business since November, 1933; has a lease on

her present location for one year; owns the fixtures and expects to remain at her present location indefinitely.

It alleges that Pauline Burdine, Inc., is a Florida Corporation; has a permanent place of business in the City of Miami; has its present place of business at Miami Beach on Lincoln Road under a lease for a term of years and expects to continue in business there indefinitely.

It alleges that Di Pinna is a corporation authorized to do business in Florida; has been engaged in mercantile business at its present location for ___ years and in the State of Florida for ___ years; that it owns the fixtures and intends to continue in business for an indefinite period.

The bill then alleges:

"That your complainants would further represent that the City of Miami Beach is situated in the sub-tropical region of the State of Florida and has an extremely delightful climate, warmed by the tropical sunshine and cooled by the breezes of the Gulf Stream immediately East of its border, and that while the rest of the country is suffering cold and disagreeable weather and conditions as a result thereof many people who live in other parts of the country at other seasons of the year maintain beautiful homes which they occupy from the early part of the Fall until late in the following Spring; said city contains upwards of one hundred luxurious hotels and upwards of three hundred fine apartment houses designed for the purpose of taking care of the great numbers of people who spend the winter portion of the year in the City of Miami Beach; that in order to take care of the demands of the winter residents and visitors many high-class expensively furnished and equipped and expensively stocked stores have been built along what is known as Lincoln Road, admittedly the highest class business street in the City of Miami Beach, if not in the South, in fact it is generally known throughout the nation

as 'Fifth Avenue of the South'; that your complainants' stores are among those above described which cater to the wishes, desires and demands of the many people who come to this particular area during said portion of the year has caused Lincoln Road and Miami Beach to be recognized as one of the highest class business and residential sections of the nation, thereby attracting to it men and women of wealth, refinement and culture to the benefit of said entire locality and indeed to the entire State; that in order that the demands of the residents and visitors of said locality be met and the standard of said locality maintained it is necessary that stores and shops of the type and kind operated and maintained by your complainants be made ready and open for business at the time when said residents and visitors arrive during October, November, and/or December of each year, and that said stores be so operated and maintained until approximately May 1st when said residents and visitors depart, and that it is the policy of your complainants to have said places of business open during the times their customers are in said locality and close them only after said residents and visitors have departed for the reason that it would be foolish and useless to keep said shops open and in full operation when all of the customers who might frequent said places of business had departed entirely from said locality; that they remain open so long as their customers are here and close only after they have departed."

The motion to strike parts of the bill of complaint above referred to was as follows:

"Comes now D. C. Coleman, as Sheriff of Dade County, Florida, Bob Simpson, as Tax Collector, of Dade County, Florida, and J. M. Lee as Comptroller of the State of Florida, defendants herein, by their undersigned solicitors, and jointly and severally move the Court to strike severally

the following parts of the Bill of Complaint in this cause, to-wit: Subparagraphs 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, and 38 of Paragraph 1, and Paragraphs 2, 3, 4, 5, 6 and 7, insofar as the allegations are applicable to the following named complainants and each of them severally, to-wit:

"GREENLEAF & CROSBY CO., INC., MADAM MOGABGAB, J. & J. SLATER, INC., PECK & PECK, INC., GATTLE'S INC., ANNA McGEE, AGNES DIAMOND, JAY-THORPE, INC., KERGE'S INC., CHARVIT & FILS, INC., EMILE C. SCHMIDT doing business as E. SCHMIDT & CO., FRANJEAN LINEN CO., INC., NANNETTE E. PAINE, VICTOR REICH, SARAH WEINSTOCK, NEVA C. TAYLOR, INC., MILGRIMS, INC., C. E. STRAUSENBACH, HERMAN GORDON and SIMON WOLFF, partners doing business as GORDON, CESAR SABBAGH, MINNIE CLAPP SCHWARTZ doing business as The Blue Hat Shop, GEORGE FARKAS doing business as Helena Rubinstein Co., JOHN P. LAWRIE, MINNA LEE, INC., I. MILLER doing business as MIAMI BEACH BOOTERY, CHARLES PELLAR doing business as PELLAR BERRY, TUNIS & ROSENFELD, LOUIS JURICK, doing business as JURICK MODES, DARRAH & DARRAH, ANNE WRIGLEY, FRANK BROTHERS FOOTWEAR, INC., TRABERT & HOEFFER, INC., MADELINE FRIEDLIN doing business as MOUNTAIN HOME SHOP, BOUE SOEURS, INC., SYLVIA S. HERR doing business as RONEY PLAZA YARN SHOP, ADA S. MacCARROLL, PAULINE BURDINE, INC., and DI PINNA; for the reason that, to-wit:

"It appears from said sub-paragraphs and paragraphs above mentioned that these defendants, and each of them, severally are 'itinerant merchants' under Chapter 14528, Laws of Florida, Acts of 1929, because they engage in this State in a seasonal business during certain seasons of the

year only, and they do not have a permanent place of business in Florida."

It will be observed that the order on motion to strike was granted except as to the complainants, Greenleaf & Crosby Co., Inc., Nannette E. Paine, Victor Reich, John P. Lawrie, Minna Lee., Inc., Madeline Freidlen doing business as Mountain Home Shop, Ada S. MacCarroll, Pauline Burdine, Inc., Di Pinna, a corporation, and Anne Wrigley, as to which parties the motion to strike was denied.

Under the allegations of the bill of complaint we do not think that the provisions of Chapter 14,528, apply to any of the complainants except with the possible exception of I. Miller, doing business as Miami Beach Bootery, Charles Pellar doing business as Pellar, Berry, Tunis & Rosenfeld and Louis Jurick doing business as Jurick Modes. These four complainants have not alleged sufficient facts in the bill of complaint to show that they do not come within the purview of the provisions of the Act here under consideration. All the other complainants have alleged sufficient facts to show that they are "Merchants having a permanent place of business in this State throughout the year and engage in business therein only for a portion of the year," and, therefore, by the terms of Section 1 of the Act they are each and every one excluded from the provisions thereof. Therefore, the order appealed from should be reversed insofar as it dismissed the bill as to all complainants except the four last above named.

We now consider the validity of the Act. We are not required to deal with the general definition of the words, "Itinerant merchant" because the legislative Act defines those words as used therein and the statutory definition, when so declared, takes precedence over and controls as against all other definitions.

The purpose of the Act is evidently to forestall and pre-

vent unfair business competition and to protect the public from fraud and deception which might be expected to be practiced by those merchants who have no permanent place of business and who may not be readily reached by legal process when their frauds and deception are discovered. There is no question presented by this statute involving discrimination between residents and non-residents.

It is contended by the appellant; first, that a regularly established merchant who has conducted a store for the sale of merchandise in the State of Florida for a number of years and at the presently occupied location for several years continuously, who owns the fixtures used in the mercantile business which are left on the premises throughout the year, who leases the store building for such mercantile business for a term of years and intends to continue such business, in the future, *although the place of business is kept open for acutal business therein only for a portion of the year,* does not come within the purview of the legislative Act here under consideration. We are compelled to agree with this contention because of the language used in the statute which in terms excepts those persons so engaged in business from the provisions thereof.

It is next contended that the legislature is not authorized to make a law which differentiates, and that the Comptroller is not authorized in administering a law to differentiate, between businesses which are branches of permanent places of business in the State of Florida and those which are not. We do not think this question is involved in this case and, therefore, it is not necessary to discuss it.

Appellants state their fourth question as follows:

"Is an occupational license tax, based only on the fact that the merchant closes his doors and removes his stock during the time his customers have gone north for the summer, in the amount of seventy-five per cent., or even thirty per

cent., of the value of his stock of merchandise in addition to *ad valorem* and city license tax, discriminatory, arbitrarily unreasonable, prohibitory and confiscatory?"

The question is not applicable because the statute does not base the required occupational license tax only on the fact that the merchant closes his doors and removes his stock at certain periods of the year. Under the statute, the tax is based upon the fact that a merchant having no permanent place of business comes into a community during the flush season, takes advantage of conditions as they exist for a few weeks or a few months, then folds up his goods, closes up shop and passes on. To sustain a statute of this sort we have to look no further than our own decisions and authorities there cited. In *Ex Parte* Smith, 100 Fla. 1, 128 Sou. 864, we said:

"The courts have frequently approved classifications resting upon the difference in fact between the business of an itinerant merchant, and the business of a merchant operated at a fixed location, both being engaged in the same general character of business. Such a classification is not based upon residence, but upon the essentially different methods employed by the two classes in carrying on the same general character of business. Such a classification has been recognized by the courts as valid both in exercise of the regulatory police power for the purpose of preventing cheats, frauds, and dangers to public health or morals (see Baccus v. Louisiana, 232 U. S. 334, 58 L. Ed. 627; Mogul v. Gaither, 121 Atl. R. 32; Holsman v. Thomas, 147 N. E. R. 750; 39 A. L. R., 760 Biddles v. Enright, 146 N. E. R. 625, 39 A. L. R. 766), as well as in the exercise of the taxing power, since the State may levy a different tax on the same general character of business when conducted in essentially different modes. See Singer Sewing Machine Co. v. Brickell, 233 U. S. 304, 58 L. Ed. 974;

Emert v. Missouri, 156 U. S. 296, 39 L. Ed. 430; Warren v. Geer, 11 Atl. 415; Howe v. Gage, 100 U. S. 676, 25 L. Ed. 754. The classification sustained."

In Hiers v. Mitchell, 85 Fla. 345, 116 Sou. 81, we said:

"In determining the legality and effect of a stationary regulation, the court should ascertain the legislative intent; and if the ascertained intent will permit, the enactment should be construed and effectuated so as to make it conform to rather than violate applicable provisions and principles of the State and Federal Constitutions, since it must be assumed that the Legislature intended the enactment to comport with the fundamental law. Davis v. Florida Power Co., 64 Fla., 246, 60 South. Rep. 759."

And again in that opinion we said:

"The second ground of objection is that the Act violates that provision of the Constitution of the United States embodied in the Fourteenth Amendment thereto, wherein all persons are granted and guaranteed within the jurisdiction of the United States the equal protection of the laws. The questions raised by this objection has been settled contrary to the contention of the defendant in error by this Court in the case of Davis v. Florida Power Co., 64 Fla. 246, 60 Sou. 759; American Annotated Cases, 1914 B. 965, in which case the Court in this regard followed the decision of the United States Supreme Court in Toyota v. Hawaii, 226 U. S. 184, 33 Sup. Ct. Rep. 47, and Tinseley v. Anderson, 171 U. S. 101, 18 Sup. Ct. Rep. 805, and later in the case of Peninsular Casualty Co. v. The State, the Court speaking through Mr. Justice WHITFIELD, reaffirmed what had formerly been said, saying: 'The State has a wide discretionary power in imposing license taxes, and unless there can be no substantial basis for discrimination made in classifications and in fixing the amount of license taxes so that such discriminations must be regarded as purely arbitrary and un-

reasonable under every conceivable condition in practical affairs, the courts will not interfere with legislative regulations of such matters. Ferguson v. McDonald, 66 Fla. 494, 63 South. Rep. 915; Singer Sewing Machine Co. v. Brickell, 233 U. S. 304, 34 Sup. Ct. Rep. 493, Ohio River & Western Railway Co., v. Ditty, 232 U. S. 576, 34 Sup. Ct. Rep. 372; Metropolis Theater Co. v. City of Chicago, 228 U. S. 61, 33 Sup. Ct. Rep. 441; Bradley v. City of Richmond, 227 U. S. 477, 33 Sup. Ct. Rep. 318.' "

What was said in Hamilton v. Collins, opinion filed May 17, 1934, reported 154 Sou. 201, does not apply to the case at bar. The statute here under consideration does not discriminate as between merchants having an established place of business in the State of Florida and who outside of that business conduct the business within the purview of the statute as an itinerant merchant in some other place in the State and the merchant who has an established place of business outside the State of Florida and conducts within the purview of the statute the business of an itinerant merchant at some place in the State of Florida.

It appears that it has been attempted to construe the Act to mean that if a merchant has a permanent place of business in the State where he conducts a mercantile business throughout the year he may then engage in the business of an itinerant merchant elsewhere within the purview of Chapter 14,528, supra, without being required to pay the license therein provided, but this construction is not tenable. The language is plain that the term "itinerant merchant" shall not apply to merchants having a permanent place of business in this State throughout the year who *engage in business therein only for a portion of the year.*

It is also contended that by the statutory definition the term "place of business" means only those places which are kept continuously open for the purpose of keeping for

sale, offering for sale and selling goods, wares, merchandise or other objects of bargain whatsoever of portable character, but this contention is not tenable because of the language just above quoted in which the Act refers to a permanent place of business, though the owner engage in business therein *only for a portion of the year.*

So it is, the statute is not discriminatory. It applies to all alike who come within its four corners.

In the State of Rhode Island v. Foster, 50 L. R. A. 339, the Supreme Court of Rhode Island had under consideration a statute imposing burdensome license tax on itinerant merchants. In that case the defendant was prosecuted for engaging in the business of an itinerant vendor without obtaining the required license therefor. In that case the Court speaking through Mr. Justice TILLINGHAST, said:

"If the imposition of such a condition has for its primary object the regulation of the business, trade or calling to which it applies, its exercise is properly referable to the police power, but if the main object is the obtaining of revenue it is properly referable to the taxing power. When, therefore, the purpose is evident in any particular instance, there can be no difficulty in classifying the case and referring it to the proper power. 'Custom,' says Mr. Cooley in his valuable work on Taxation (p. 587) 'has much to do in determining whether certain classes of exactions are to be regarded as taxes or as duties imposed for regulation. If, by the common understanding and general custom of the country, a particular duty is regarded as being imposed upon certain individuals, not as their proportionate share in the burdens of government, but because of some special relation to property peculiarly located, or to business peculiarly troublesome or dangerous, so that a requirement that the duty shall be performed by such individuals is usually regarded as only in the nature of regulation

of relative obligations and duties through the neighborhood or the municipality, there is no sufficient reason why this may not be considered as mere police regulation, though the proceedings assume the form of taxation, and are even designated by that name.' We think it is reasonably clear from the custom and common understanding regarding such acts as the one now under consideration, as well as from the statute itself, that its main purpose was the regulation of the business of persons who temporarily locate in a given place, and not the obtaining of a revenue therefrom, and hence that it falls within the police power of the State. It is of the same general nature as statutes requiring licenses for hawkers and peddlers, which have been in force in this State for nearly a century, and which unquestionably are police regulations. The statute is, therefore, not against public policy, as argued by defendant's counsel, but evidently in harmony therewith; for it is to the statutes of the State, mainly, that the court must look to ascertain what its public policy is. In other words, the Acts of the Legislature practically determine the policy of the State. And whether a given Act is expedient or inexpedient, politic or impolitic, is for the determination of the Legislature, and not for the court. License Tax Cases, 5 Wall, 462, 18 L. Ed. 497; Leep v. St. Louis, I. M. & S. R. Co., 58 Ark. 414, 23 L. R. A. 264, 25 S. W. 75; Baxter & Tripp, 12 R. I. 310.

"But it is strenuously contended on the part of the defendant that the restrictions and license fees provided for by the statute are so far beyond what is reasonably necessary for the regulation and control of the kind of business contemplated by the Act as to practically amount to the prohibition of business which in itself is perfectly legitimate and harmless, and hence that the Act is clearly invalid as being in restraint of trade. We appreciate the force of

this argument and it is not without considerable hesitation that we have come to the conclusion not to adopt it. The restrictions which are placed upon almost all kinds of mercantile business, except such as is permanently carried on in a given locality, are certainly very stringent and, so far as we are aware, more burdensome than are imposed by similar statutes in other states. See Me. Rev. Stat. 1885-95, p. 261, No. 4; Mass. Acts & Resolves, 1890, Chap. 448, No. 6; 2 N. J. Gen. Stat. p. 1827, No. 8; N. H. Laws 1897; Chap. 46 No. 2; Ohio Laws 1894, p. 174, No. 2; Vt. Stat. No. 4753; Md. Laws 1892, Chap. 596; Mont. Laws 1891, p. 165; Nev. Laws 1899, p. 105. But, in view of the very broad discretion which is vested in the general assembly to pass laws pertaining to the general welfare of the State (Harrington v. Providence, 20 R. I. 238, 38 L. R. A. 305, 38 Atl. 1), we cannot say that the restrictions imposed upon trade by the Act in question are so clearly an invasion of the liberty or property of the citizen as to render it obnoxious to the Constitution."

As heretofore indicated, the order appealed from should be affirmed in part and reversed in part.

It is so ordered.

Davis, C. J., and Whitfield, Ellis, Terrell and Brown, J. J., concur.

Davis, C. J. (concurring).—If the Legislature has the right (as we have held that it has) to single out the business of selling gasoline and impose on it an excise tax equal in many instances to the wholesale price of each gallon sold, while exempting kerosene and other similar fuels entirely from the tax, I see little constitutional difficulty to be encountered in a legislative attempt to single out for special taxation that class of merchants whose business is presumptively so profitable that they can make sufficient profits in three months to pay twelve months rent and enjoy a nine-

months vacation from business on the profits of the three. The proposition is analogous to income tax laws which tax the recipient of earned incomes at one rate and the recipient of unearned incomes at a higher rate, and which tax the recipient of an income of small amount at one rate and the recipients of higher incomes on a progessively increasing and higher rate.

The chain store tax statutes have been sustained as against the constitutional objection that they classify and tax merchants according to their peculiar manner of transacting business (Liggett Co. v. Lee, 288 U. S. 517, 53 Sup. Ct. 481 and cases therein cited). I think the holdings of the chain store tax cases are ample to support the validity of a statute which undertakes to impose a special scale of taxation on merchants who have a permanent place of business in Florida but who keep open for business only a portion of the year in a tourist State where the court judicially knows that these seasonable businesses are amongst the most profitable that we have.

Unfortunately, however, for the contentions of the State authorities who seek to enforce the tax, the Legislature, if it intended to reach and tax such businesses, has through inadvertence in the use of statutory language, defeated the purpose it had in mind. It has by the express unambiguous terms of its own statute declared that it shall not apply to merchants having a permanent place of business in this state throughout the year who engage in business *therein* only for a portion of the year. I think the word "therein" must be construed as referring to the phrase "place of business' and not to the word "state" under the rule that where a tax statute is susceptible of two meanings, or is ambiguous, the construction favorable to the taxpayer must prevail. See State *ex rel.* Packard v. Cook, 108 Fla. 157, 146 Sou. Rep. 223.