STATE, *ex rel.* G. R. LAWSON, v. C. J. WOODRUFF, as Chief of Police of the City of Tampa.

184 So. 81.
Division B.
Opinion Filed October 21, 1938.

438

*Baya & Baya,* for Plaintiff in Error;

*Alonzo B. McMullen, Ralph A. Marsicano* and *M. Henry Cohen,* for Defendant in Error

WHITFIELD, P. J.—The writ of error herein was allowed and taken from a final order on judgment in habeas corpus

proceedings remanding the petitioner to the custody of the Chief of Police of the City of Tampa, Florida, who stated in his return to the writ of habeas corpus that petitioner was arrested "for and upon an offense committed in the presence of the police officers of the City of Tampa, and a charge was entered against him on the docket of the Municipal Court of the City of Tampa, Florida."

The docket entry referred to is shown by the transcript to be as follows:

"ENTRY APPEARING ON DOCKET OF POLICE DEPARTMENT OF THE CITY OF TAMPA.

"On the 31st day of May, A. D. 1937, one George R. Lawson, as an officer or agent of Ira A. Watson, Inc., did unlawfully advertise and conduct a sale of merchandise at 202 South Franklin Street in the City of Tampa, Florida, and did represent and advertise the same as a fire sale without having first filed with the Tax Collector of the City of Tampa an inventory of the merchandise to be offered for sale at said sale together with the wholesale price thereof and without first having applied for and paid or caused to be paid a City license to conduct said sale as required by Section 1 of Ordinance No. 474-A of the City of Tampa, Florida, and in violation of the terms and requirements of said Ordinance."

Petitioner filed an answer to the return to the writ of habeas corpus, in which he admits his arrest under Ordinance No. 474-A of the City of Tampa, "and admits that a charge was entered against him on the Docket of the Municipal Court of Tampa, Florida, as alleged in Paragraph One of the return, but petitioner denies that Ordinance No. 474-A is a valid Ordinance, and denies that said Docket charge constitutes a valid legal charge against petitioner;

and denies that this petitioner has committed any criminal offense whatsoever."

As the petitioner admits he was arrested for a violation of the city ordinance, though he challenges the validity of the ordinance, the question of the validity of the arrest and detention on the docket charge need not be considered.

Pertinent parts of the City Ordinance No. 474-A are:

"*Whereas,* there are and for some time past have been persons, firms or corporations engaged in conducting bankrupt, trustee, receivership, insolvent, insurance, fire, water damaged, * * * and other similar stock, and,

"*Whereas,* such sales are in many instances so conducted through the practice of subterfuge and deceit as to result in fraud, and,

"*Whereas,* it is deemed necessary to regulate and license such sales in order to promote the peace, welfare and prosperity and morals of this City, Now, Therefore,

"BE IT ORDAINED BY THE BOARD OF REPRESENTATIVES OF THE CITY OF TAMPA:

"Section 1. It shall be unlawful for any person, firm or corporation within the City of Tampa, Florida, to advertise or conduct any sale of goods, wares or merchandise that is represented as bankrupt, trustee, receivership, insolvent, insurance, fire, water damaged, closing out, closing stock, manufacturers, manufacturers' outlet, executors, administrators, jobbers, wholesalers, adjusters, liquidation, removal, distressed or other similar sale of goods, wares and merchandise, or any other sale wherein by representation or advertisement it is intended to lead the public to believe that the person, firm or corporation so conducting such sale is selling the goods, wares and merchandise so offered for sale at less than the current or going retail price thereof, without first obtaining from the Tax Collector of the City

of Tampa, a license so to do, and, at the time of applying for said license, filing with the said Tax Collector an inventory containing a complete and accurate list of all the goods, wares and merchandise to be offered for sale at said sale, together with the wholesale price thereof, which inventory shall be signed by the person seeking the license where the same is sought by an individual, and by a member of the firm seeking the license where the license is sought by a firm, and by an officer of the corporation where the license is sought by a corporation, and the person so signing shall execute an affidavit to the effect that the inventory so submitted contains a full, true and accurate list of the goods, wares, and merchandise to be offered for sale, and that the wholesale price stated therein is the true current wholesale price thereof, and whether the applicant for said license has been engaged in the sale of goods, wares and merchandise at the same location where the sale is proposed to be held and the length of time during which the applicant has been engaged in business at said location prior to applying for said license.

"Section 2.  Applicants for licenses under the provisions hereof shall be classified as Itinerants and Non-Itinerants. Itinerants shall be those persons, firms or corporations who shall not have been engaged in business at the location where the sale is proposed to be held at least one (1) year immediately preceding the making of the application for said license, and Non-Itinerants shall be those persons, firms or corporations who shall have been engaged in business at the location where the said sale is proposed to be held for one (1) year or more, immediately preceding the making of said application for said license.

"Section 3.  No license shall be issued to any person, firm or corporation to conduct a sale of the nature contem-

plated in Section 1 hereof for a period of less than ten (10) days, nor more, than sixty (60) days. ·

"Section 4. The fee for such license, when issued to an itinerant licensee, shall be and the same is hereby fixed as follows: For a period of ten (10) days $25.00 per day; for a period of more than ten (10) days $25.00 per day for the first ten (10) days and $10.00 per day for each additional day, and it is further provided that the license fee for the duration of the sale shall be paid in advance and upon the issuance of the said license. The fee for such license to a Non-Itinerant licensee shall be, and the same is hereby fixed at the sum of $10.00 for the duration of the sale, which fee shall be paid to the Tax Collector in advance and upon the issuance of said license."

Plaintiff in error in effect contends that the city ordinance requiring a special license, additional to the regular mercantile license, on those desiring to hold special sales of goods, wares and merchandise as stated in the ordinance; providing restrictions on all persons making such sales; containing a classification based solely on whether the person making the sale has been doing business at the location where the sale is proposed to be held for a period of one year; and through such classification imposing a large additional license fee on those classed as itinerants, while another class, defined as non-itinerants, making similar special sales, are required to pay only a nominal license fee for making such special sales, is invalid and unconstitutional in that it unlawfully restrains petitioner of his liberty, in that the classification is unreasonable and arbitrary and without a basis of fact, and the license tax excessive and prohibitive as against petitioner who has not been engaged in that business in the city for one year and is therefore classed as an itinerant by the ordinance complained of.

It is also contended that the additional license tax for making such special sales upon those classed as itinerants is prohibitive and "an arbitrary and unnecessary restriction of the right of property, and is in restraint of trade."

The Constitution of the State of Florida contains the following:

"All men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing happiness and obtaining safety." Sec. 1, Declaration of Rights.

"All courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay." Sec. 4, Declaration of Rights.

"No person shall be subject to be twice put in jeopardy, for the same offense, nor compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property without due process of law; nor shall private property be taken without just compensation." Sec. 12, Declaration of Rights.

Article XIV of the Amendments to the Federal Constitution contains the following:

"* * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The above quoted organic provisions are a charter of human liberty and of individual rights against any and all abuses, or arbitrary, unjustly discriminating or essentially

unfair exercise of delegated governmental power, authority or duty, of any nature or character whatsoever.

The dominant principles proclaimed in the quoted sections are paramount insuperable commands to all governmental officers, tribunals, boards, commissions or other agencies or functionaries, who exercise delegated power or authority or duty, whether under the form of law or ordinances or resolutions, substantive or procedural, or not, and whether State, county, district, municipal or other nature or character, and whether legislative, executive, judicial, administrative, municipal, ministerial or other nature or character.

Section 4, above quoted, is designed to effectuate the security and enjoyment of the organic "inalienable rights." The courts are required to preserve and enforce the secured rights of all persons within their jurisdiction by impartially and fairly administering "right and justice" "by due course of law" in all cases that are duly presented for judicial adjudication.

In effect the quoted organic sections are all embracing and insuperable commands that "before the law" "all men are equal," and that no governmental authority or agency whatever, State, county, municipal or other, under the Constitution, laws and government of this State, shall deprive any person of life, liberty or property or of any right pertaining thereto, except by duly conferred and exercised authority of law that is constitutional and otherwise valid; and such authority of law must be substantially and essentially fair to all persons similarly situated, conditioned and circumstanced, and not arbitrary, whimsical or unjustly oppressive in its nature or in the means or manner of its application or its effect upon any of the organic rights affecting life, liberty or property or the equality of all men before the law; and it is expressly made the duty of all courts of this

State to administer "right and justice" "by due course of law" to "every person for any injury done him in his lands, goods, person or reputation."

But a denial of the right to "be equal before the law" and of the right to enjoy and defend life and liberty, and to acquire, possess and protect property, including all property rights, may not be assumed and must be duly shown in appropriate proceeding if judicial relief or redress is invoked. See Peninsular Casualty Co. v. State, 68 Fla. 411, 67 So. 165; Peninsular Industrial Ins. Co. v. State, 61 Fla. 376, 55 So. 398.

Classifications for police regulation and taxation should be sustained by the courts for enforcement if there is any conceivable reasonable and legal basis therefor; and the practical operation of the classifications made is not arbitrary, whimsical or grossly unjust and oppressive. Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912 C p. 160; Davis v. Florida Power Co., 64 Fla. 246, 60 So. 759; Levy v. Stone. 97 Fla. 458, 121 So. 565; Heriot v. City of Pensacola, 108 Fla. 480, 146 So. 654.

Police regulations to conserve the health, morals, safety, good order, protection from fraud or imposition or deceit, and the general welfare, may be by the exertion of the duly authorized taxing power as well as by commands and prohibitions and limitations under the police power or both; and city ordinances for that purpose should not be nullified unless they are unreasonable and arbitrary or grossly unjust and oppressive under classifications as made.

Ordinance No. 474-A of the City of Tampa is a police regulation as well as the exercise of the taxing power of the city to prevent imposition and deceit in high powered special sales of damaged goods; and it is not made to appear that the ordinance exceeds the charter powers of the city,

or that it is unreasonable, arbitrary, prohibitory or oppressive to those classified as Itinerants so as to violate any property rights secured by the Constitution of the State and the Fourteenth Amendment to the Federal Constitution. See Rast v. Van Deman, 240 U. S. 342, 36 Sup. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A 421, Ann. Cas. 1917B 455.

The classification complained of is of "those persons, firms or corporations who shall not have engaged in business at the location where the sale is proposed to be held for at least one (1) year immediately preceding the making of the application" for a license to make the stated special sales by "Itinerants," as distinguished from those who have been so engaged for one year or more, who are classified as "Non-Itinerants." Such classification has reference to those engaged in the mercantile business generally, is not arbitrary or unreasonable as a means to protect the public from being imposed on in special sales of damaged goods, wares and merchandise, by those who have no established responsibility in the community.

Petitioner is not in the class who may move from location to location in the city within one year, but is in the class with those who have come into the city within a year, and seek a license to make the special sales of damaged goods as specified in the ordinance, therefore he cannot complain of the effect of the ordinance on another class. See State v. Philips, 70 Fla. 340, 70 So. 367, Ann. Cas. 1918A 138.

The purpose of the ordinance being to protect the public of the community from being imposed upon by irresponsible itinerant salesmen in holding special sales of damaged goods, wares and merchandise, and the differences in the greater license taxes to be paid by itinerants being designed to prevent or greatly discourage such special sales of damaged goods with the opportunities for imposition afforded

in making such special sales by itinerants, it cannot fairly be said that such taxes are illegally excessive even when imposed by ordinance and not by statute, when the city could, as a police measure, be authorized to prohibit such special sales in the city by those who are not identified with the reliable and responsible business enterprises that are established in the city. See Greenleaf v. Coleman, 117 Fla. 723, 158 So. 421.

In State, *ex rel.*, v. Mizell, 106 Fla. 65, 142 So. 824, there was no classification of itinerants from non-itinerants.

This case is essentially unlike *Ex parte* Smith, 100 Fla. 1, 128 So. 864, and Hamilton v. Collins, 114 Fla. 276, 159 So. 201.

In Roach v. Ephren, 82 Fla. 523, 90 So. 609, the ordinance was a tax measure and the difference between the $2,500.00 license imposed by ordinance, and not by statute, on wholesale peddlers, and $75.00 on retail peddlers, was under the charter powers of the city held to be unreasonable as a tax measure, there being no purpose to make regulations for the health, safety and welfare of the public in the community. In that case it is said:

"The reasonableness of a statute is not open to judicial review unless organic law is thereby violated; but the reasonableness of a municipal ordinance is subject to judicial determination.

"Even if the license tax of $2,500.00 imposed by ordinance on wholesale peddlers when considered with the license tax of $75.00 imposed on retail peddlers, is not so arbitrary and excessive as to amount to a denial to the former of the equal protection of the laws, the wholesale peddler's license tax is clearly unreasonable, in that no question of public health, morals or safety being involved, the difference in the license tax imposed on wholesale peddlers and retail peddlers is so great that it can have no fair re-

lation to differences between the businesses done by the two peddlers."

See also Dusenbury v. Chesney, 97 Fla. 468, 121 So. 567.

In this case the ordinance is a police measure to protect the public from imposition and deceit, and the difference of $25.00 a day for the first ten days and $10.00 a day thereafter imposed on itinerants, and $10.00 for the duration of the sale by non-itinerants, is not illegally excessive even when imposed by ordinance under the general statutory charter powers of the city, since the ordinance is primarily and essentially a police measure to protect the public against imposition and deceit by itinerants holding special sales of damaged goods in the city. See State, *ex rel.*, v. Allen, 83 Fla. 214, 91 So. 104, 26 A. L. R. 735; Freeman v. Tittsworth, 126 Fla. 483, 171 So. 307.

The regulatory provisions of the ordinance, designed to make the ordinance effective, are not shown to be unreasonable or arbitrary and oppressive in view of the public welfare purpose of the ordinance, so there is no denial of the due process of law, and as such regulations are applicable to both itinerants and non-itinerants as defined by the ordinance, and there is no denial of equal protection of the laws and no lack of equality before the law in the ordinance.

Affirmed.

BROWN and CHAPMAN, J. J., concur.

TERRELL and BUFORD, J. J., concur in the opinion and judgment.

ELLIS, C. J., not participating.