CARROLL, Judge.
This appeal by the City of Miami Beach, the members of the city council and certain other city officials who were defendants in the court below, is from a declaratory decree which held invalid the provisions of Chapter 7 of the Code of the City of Miami Beach, enacted for the purpose of regulating liquidation and distress goods sales by merchants.
The appellee Austin Burke, Inc. was convicted in the city court of violating the ordinance by advertising a sale of the kind regulated thereby without having applied for and obtained a license thereunder. The appellee then sought and obtained a declaratory decree holding the ordinance invalid and enjoining enforcement.
Sales covered by the regulatory ordinance were defined therein under its section 7.1, as follows:
“(a) The sale, or offer to sell, by any person to the public of goods in stock, on order, or in transit, with a declared advertised purpose that such sale is anticipatory to the termination, closing, liquidation, revision, windup, discontinuance, conclusion or abandonment of the business, or any part thereof, or any line of goods, or any one store of a group of stores in connection with such sale, and it shall include any and all sales advertised in such manner as to reasonably convey to the public the impression that upon the disposal of the goods advertised, or on hand, the business will permanently cease and be discontinued; and
“(b) The sale, or offer to sell, by any person to the public of goods in stock, on order, or in transit, with a declared advertised purpose that such sale is anticipatory to the temporary closing or temporary discontinuance of the business for the purpose of alterations or remodelling of the premises, or for the purpose of moving to another location; and
“(c) The sale, or offer to sell, by any person to the public, of goods so ad *722 vertised as to reasonably convey to the public that such goods are damaged or altered by fire, smoke, water, hurricane, flood, explosion or other means; and
“(d) The sale, or offer to sell, by any person to the public, of goods advertised in such a manner as to reasonably cause the public to believe that the goods to be sold, or any part thereof, have been involved in any business failure, or have been derived from a business which has failed, been closed, discontinued or liquidated, or where such advertising indicates a business failure or emergency affecting the seller or any previous holder of the goods to he sold.”
Section 7.7 of the ordinance set out matter pertinent to this case as follows:
“The City Clerk shall not issue the license provided for in Section 7.5 hereof, if any one, or more, of the following facts or circumstances are found:
“(a) That applicant was granted a license for a sale as defined herein within two (2) years preceding the date of the filing of the application.
“(b) That applicant has heretofore been convicted of violation of this chapter, or has had a license issued to him pursuant to this chapter revoked within a five (5) year period immediately preceding the date of filing of application.
“(c) That the inventory includes goods purchased by the applicant, or added to the stock, in contemplation of such sale and for the purpose of selling the same at such sale. For the purpose of this subsection, any unusual addition to the stock of goods made within sixty (60) days prior to the filing of such application shall be prima facie evidence that such addition was made in contemplation of such sale and for the purpose of selling the same at such sale.
“(d) That applicant in ticketing, pricing or marking of the goods to be offered for sale has misrepresented the retail price as listed in the inventory required under Section 7.3(e) hereof, or the value thereof, or the quality, kind or quantity of such goods, or the country of origin of said goods.
“(e) That any lease, or sublease, held by applicant was formerly held by a corporation of which the applicant was an officer, director or stockholder or by any member of applicant’s immediate family, and that such corporation, or member of applicant’s immediate family, was granted a license provided for in Section 7.5 hereof within two (2) years preceding the date of the filing of application.
“(f) That any representation made in the application is false.”
Section 7.9 provided for payment of a $25 license fee, and elsewhere the ordinance fixed conditions and requirements for such sales.
The provision of the ordinance which grants discretion to the city clerk as to issuance or denial of applications is § 7.5, which reads as follows:
“Upon receipt of such application and payment of the fee prescribed by Section 7.9 hereof, the City Clerk shall cause the same to be investigated. If, after such investigation, the City Clerk is satisfied as to the truth of statements contained in said application, and as to the form and language content of the proposed advertising matter, he may, in his discretion, issue a license permitting the advertising and conduct of such sale for a period of not more than thirty (30) consecutive days, Sundays and Legal Holidays included, following the issuance thereof, provided that, in addition, for a sale as defined in Section 7.1 (a) hereof applicant shall surrender all occupational licenses held for said business as a prerequisite to issuance of such license.”
In the decree appealed from the chancellor held that the ordinance violated state and federal constitutional provisions against *723 free speech, due process, and equal protection of the laws, in certain respects and on certain grounds, as follows:
(1) That the city was without power to regulate such sales, in that such regulation of sales violates constitutional guarantees.
(2) For conferring unlimited discretion on the city clerk to grant or deny applications for licenses thereunder.
(3) Because the ordinance exempts, subject to certain conditions, sales by a merchant in anticipation of seasonal or vacation temporary closings.
(4) Because a bond is required for the defined sales other than sales for liquidation or going out of business, hut is not required as to the latter.
(5) Because the ordinance provides for a two-year period between applications (a provision which applies equally to all of the defined sales).
(6) Because the ordinance provides that no such sale shall be licensed to one who has been convicted of violating the ordinance or had a license thereunder revoked within the preceding five years.
The power of the City of Miami Beach to regulate sales such as those defined in the ordinance is well established by law and is provided for expressly in the Charter of the City of Miami Beach, and the chancellor was in error in holding otherwise. Supervision and regulation of such sales and the special licensing thereof upon designated conditions is proper action by a municipality, under the police power, as a means of protection of the buying public from false or misleading advertising and deception. Greenleaf & Crosby Co. v. Coleman, 117 Fla. 723, 158 So. 421, 427; State ex rel. Lawson v. Woodruff, 134 Fla. 437, 184 So. 81. In the latter (184 So. at 84) the Supreme Court said:
“Classifications for police regulation and taxation should be sustained by the courts for enforcement if there is any conceivable reason and legal basis therefor; and the practical operation of the classifications made is not arbitrary, whimsical or grossly unjust and oppressive. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369, Ann.Cas.1912C[,] p. 160; Davis v. Florida Power Co., 64 Fla. 246, 60 So. 759, Ann.Cas.1914B, 965; Levy v. Stone, 97 Fla. 458, 121 So. 565; Heriot v. City of Pensacola, 108 Fla. 480, 146 So. 654.
“Police regulations to conserve the health, morals, safety, good order, protection from fraud or imposition or deceit, and the general welfare, may be by the exertion of the duly authorized taxing power as well as by commands and prohibitions and limitations under the police power or both; and city ordinances for that purpose should not be nullified unless they are unreasonable and arbitrary or grossly unjust and oppressive under classifications as made.”
In conformity to the legal principles announced in those cases, power to regulate such sales was granted to the City by an amendment to its charter, as follows:
“The City of Miami Beach shall have the power through its City Council, by ordinance, to prohibit deceptive or fraudulent advertisements pertaining to the sale of goods, wares, merchandise or services and to provide a penalty for the violation of such ordinance and to provide for the licensing, regulation and supervision of all sales of goods, wares and merchandise when the same are to be advertised as being conducted other than in the due course of a continuing business.”
In our opinion the ordinance in question enacted under the authority of the charter represents a proper exercise of police power, except for its delegation of discretion to the city clerk to grant or deny licenses thereunder without supplying standards. Therefore, we are impelled to disagree with the holding of the able chancellor that the *724 ordinance was unconstitutional and invalid for the reasons assigned in the decree, other than the one relating to the unlimited discretion given to the city clerk. With respect to the latter, we hold, as did the chancellor, that the present ordinance is invalid for granting such discretion to the city clerk without standards or guide lines sufficient to control that discretion within proper limits and to remove opportunity for its exercise arbitrarily or for bias. See State ex rel. Taylor v. City of Tallahassee, 130 Fla. 418, 177 So. 719; Permenter v. Younan, 159 Fla. 226, 31 So.2d 387, 389; Drexel v. City of Miami Beach, Fla.1953, 64 So.2d 317; Godshalk v. City of Winter Park, Fla. 1957, 95 So.2d 9, 10; City of Naples v. State, Fla.App. 1958, 100 So.2d 78; Cassady v. Consolidated Naval Stores Co., Fla.1960, 119 So.2d 35; 38 Am.Jur., Municipal Corporations, § 337; 62 C.J.S. Municipal Corporations § 154d; Anno., 12 A.L.R. 1436; 54 A.L.R. 1104; 92 A.L.R. 401.
We affirm the decree as to that holding of the chancellor, and reverse the decree to the extent it held the city was without power to regulate such sales and that the ordinance was rendered invalid by reason of the provisions referred to in the grounds of the decree which are referred to above as numbers 3, 4, 5 and 6.
 The exclusionary provision of the ordinance referred to in ground six of the decree as set out above and which appears as subparagraph (b) in § 7.7 of the ordinance, due to its punctuation is ambiguous as to whether the 5-year period specified there applies to one who has been convicted of violation of the ordinance or applies only to one who has had a license for such a sale revoked. We would agree with the chancellor that a provision which operated to bar permanently one who has been so convicted of a violation of the ordinance would be arbitrary and unreasonable, but in our view the language of that provision of the ordinance should not be so construed. On reading that provision with the ordinance as a whole it should be construed to mean that an application may not be granted until after a lapse of 5 years to one who is convicted of a violation of the ordinance or to one who has had such a license revoked.
 The imposition by the ordinance of a 2-year interval between such sales by an applicant should not be held to invalidate the ordinance. No sound reason is advanced why the regulatory ordinance may not include that requirement to prevent undue prevalence and repetition of such sales by a merchant. With a 2-year interval between applications applied generally, it does not appear unreasonable that the ordinance imposes a period or interval of three additional years as to one who has been convicted of violating the ordinance or who has had an issued license revoked for a violation.
 The chancellor was of the opinion that the exemption, from the sales defined for regulation, of sales held prior to temporary closings for end of season or vacation periods, amounted to denial of equal protection of the laws and invalidated the regulatory ordinance. We can not agree. It is a matter of common knowledge that end of season sales are customary in resort communities by merchants who close temporarily for the “off season,” or vacation period. This is especially so of those catering to the seasonal patronage. The public is accustomed to season-end sales, and from their nature and the time and occasion thereof, the exception of those sales is supported by sufficient basis for their separate classification. Moreover, although excepted from the general provisions of the ordinance, those season-end and vacation period sales are not left without some regulation. The ordinance limits a sale of that kind to not more than 30 days in one year, and requires that a seasonal or vacation period closing shall follow within 14 days.
Turning now to a further consideration of the provision of the ordinance which accorded discretion to the city clerk, it should *725 be noted that conditions to be met under the ordinance to entitle one to a license were definitely set out, and the several circumstances in which a license would be denied were specified. However, the ordinance was not so drafted as to require or assure the issuance of a license to an applicant who met the required conditions. Instead, after directing the city clerk to investigate the merits of applications, the ordinance proceeded to place in that official the power to grant or deny an application in his discretion.
In determining the effect of that provision on the validity of the ordinance, it must be noted at the outset that merchandising is a lawful business, and although merchants’ sales of the kind defined in the ordinance may be subject to regulation by a municipality, the regulation thereof can not be left to discretion of an official without prescribing definite rules of action and standards in the licensing ordinance to control the exercise thereof. In that respect the business at hand must be distinguished from one such as sale of intoxicating liquors which has been held to be a privilege, and not a lawful business in which one has an inherent right to engage, and as to which it has been held appropriate to place regulation in the discretion of an official without the need to set definite controlling standards. That distinction was pointed out by the Supreme Court in the case of Permenter v. Younan, supra, 159 Fla. 226, 31 So.2d 387. Thus, in reference to regulation of a lawful business, as distinguished from one engaged in not of right but as a privilege, the Court in Permenter v. Younan, supra (at p. 389), said:
“The generally accepted rule is to the effect that an ordinance which vests in municipal authorities arbitrary discretion to grant or revoke a license to carry on an ordinarily lawful business, without prescribing definite rules and conditions for the guidance of the authorities in the execution of their discretionary power, is invalid. 38 Am.Jur., p. 26, Section 337; Anno., 12 A.L.R. 1436, 54 A.L.R. 1104, and 92 A.L.R. 401.”
In the later case of Drexel v. City of Miami Beach, supra, Fla.1953, 64 So.2d 317, the Supreme Court cited the Permenter case and quoted from it as above. In Drexel an ordinance gave the Miami Beach City Council discretion to grant or deny permits for construction of multiple-level automobile parking garages. No rules or standards were fixed to control the exercise of discretion, other than a direction that “consideration shall be given to the effect upon traffic of the proposed use.” In holding the same to be invalid, the Supreme Court regarded the ordinance as granting uncontrolled discretion, affording an opportunity in its exercise for arbitrary discrimination between applicants for such permits, and that it was such as “could be construed to allow all manner of latitude in the grant of a permit in one case and the denial of a permit in a similar one, and would give every opportunity for the exercise of the power with partiality.” The Supreme Court then added that “[s]uch laxness and inexactness in a delegation of the power is not sanctioned by the courts.”
Those pronouncements by the Supreme Court in the Permenter and Drexel cases furnish adequate support for the holding of the chancellor that the provision placing discretion in the city clerk to grant or refuse such license applications without supplying uniform rules or standards, rendered the ordinance invalid.
Accordingly, the decree appealed from is affirmed in part and reversed as and in the respects set out above.
Affirmed in part and reversed in part.