97 So.2d 464 (1957)
Richard W. ERVIN, as Attorney General of the State of Florida, Appellant,
v.
CAPITAL WEEKLY POST, Inc., a Florida corporation, and P.O. Riley, Appellees.
Supreme Court of Florida, Special Division A.
June 19, 1957.
Rehearing Denied September 18, 1957.
*465 Richard W. Ervin, Atty. Gen., Howard S. Bailey and James L. Graham, Jr., Asst. Attys. Gen., for appellant.
Weldon G. Starry, Tallahassee, for appellees.
PARKS, Associate Justice.
This is an appeal from the final decree of the Circuit Court of Leon County, entered upon the bill of complaint of the Attorney General praying for an injunction against publication of the hereafter mentioned advertisement, and the answers of the defendants, Capital Weekly Post, Inc., a Florida corporation, and P.O. Riley. The plaintiff and defendants both moved for a summary decree. Upon hearing, the court denied the injunction and entered the decree from which this appeal was taken.
The material facts emerging from the pleadings are not complicated and call for the construction of certain parts of F.S. Section 99.161, F.S.A., in relation to the proposed publication in Capital Weekly Post, a newspaper published and circulated in Leon County by Capital Weekly Post, Inc., co-defendant, of an advertisement tendered by defendant, P.O. Riley.
According to the allegations of the complaint, Riley delivered the advertisement to his co-defendant, together with the agreed consideration, for its publication in the issue of November 17, 1955. The advertisement urged and advocated the candidacy of the Honorable Fuller Warren for the office of Governor with relation to the 1956 primaries which were to be held in the spring of that year. It consisted of Mr. Warren's picture, underneath which appeared the words "Let's Return Fuller to Tallahassee," the undisputed *466 meaning of which was "Let's Return Fuller Warren to Tallahassee as Governor."
At that time Mr. Warren had made no announcement to any person or to the public that he would be a candidate for that office. Neither defendant Riley nor the Capital Weekly Post, Inc., had consulted Mr. Warren or anyone else on his behalf concerning the proposed publication of the advertisement. Similar publications had already been made in the press of twelve or fourteen cities of the state. The record fails to disclose that Mr. Warren had any knowledge of or connection with any of these publications. It was alleged in the complaint that the advertisement was for campaign purposes in "the promotion" of and "in furtherance" of his, Mr. Warren's, candidacy and this was denied in the answer. Pending the determination of the legality of the publication it was agreed that publication of the advertisement would be withheld.
The lower court, as heretofore noted, denied the injunction and dismissed the bill, holding that expenditures in the promotion of an unannounced candidacy were not condemned by the election laws. In reaching this conclusion, the court applied to the applicable provisions of the election code the definition of "candidate" set forth in F.S. Section 99.011, F.S.A. This section provides:
"The word `candidate' shall mean any person who has announced to any person, or to the public, that he is a candidate for a certain office."
The effect of the decree is that until a person has announced his candidacy within the meaning of Section 99.011, F.S. 1955, F.S.A., unlimited sums of money expended for newspaper advertisements, communications or other media, may be resorted to in urging or promoting the candidacy of such person.
At the threshold of this appeal the appellees contend that the matter in litigation is moot as to them and for that reason this court should not entertain the appeal. This contention has been settled contrarywise in Bowden v. Carter, Fla., 65 So.2d 871, 873, wherein the court said:
"It is suggested by petitioner-appellee that inasmuch as he has now changed his registered party affiliation to Republican, the operation of Section 101.111 does not now operate to deprive him of his right to vote either in his party primary elections or in general elections, wherefore all questions raised on this appeal are moot as to him. We think, however, that the declaration by the lower court of the invalidity of portions of Section 101.111 as applied in primary elections is of sufficient public interest that this court may review it. Pace v. King, Fla., 38 So.2d 823."
We reiterate that an appellate court does not lose jurisdiction of a cause even though the matter in controversy has become moot as to one or more of the litigants in cases involving wide public interest or where such matters involve the duties and authority of public officials in the administration of the law and are of general interest to the people. The future administration of the election law by public officials requires the hearing of the merits of the appeal. See State ex rel. Railroad Com'rs v. Southern Tel. & Const. Co., 65 Fla. 67, 61 So. 119; Barrs v. Peacock, 65 Fla. 12, 61 So. 118; Pitt v. Belote, 108 Fla. 292, 146 So. 380; Joughin v. Parks, 107 Fla. 833, 143 So. 145, 147 So. 273.
In the disposition of the cause we find there is no need to discuss or determine the constitutional questions asserted by the defendants who insist that their rights of free speech and freedom of the press guaranteed them would be denied or impaired should the court uphold the allegations of the bill. However, we note that the cases of Smith v. Ervin, Fla., 64 So.2d 166, and Ervin v. Finley, Fla., 64 So.2d 175, 176, seem to have resolved the matter against such contention.
*467 The contention of the Attorney General is that considering the intent of the statutes as a whole, the advertising in question is condemned in point of time as a violation of the election code. In other words, he argues the statutes condemn advertisement or expenditure of money in the promotion of a candidacy by any person prior to an announcement by the candidate. He argues that F.S. Section 99.011, F.S.A., defining a candidate, was old legislation having originally been incorporated in the Bryan Primary Law of 1913 and brought forward in the several revisions of our election laws but that F.S. Section 99.161, F.S.A., was a 1951 act independent of the election code (amended in 1955 by adding Subsection 99.161(2)(d)), not burdened with that definition and by legislative action that 1951 act was substituted for and superseded the F.S. Section 99.161, F.S.A., originally prepared for the revised election code. Furthermore, where obviously a definition is contrary to or destructive of the legislative intent of an act of which it is a part, it is not sacrosanct but is subject to statutory construction in relation to conflicting provisions of the act, and, in relation to the curtailing of campaign activities with respect to the time element, the 1955 legislature did, by Section 99.161(2)(d), condemn and prohibit advertisement by the candidate or any person in his behalf "prior to noon of the first filing date for the nomination which said candidate seeks * * *."
It is further argued that, since the adoption of Section 99.161(2)(d) in 1955, expressing the intent that no money shall be spent directly or indirectly for campaign advertising for the promotion of anyone's candidacy prior to the first day upon which a candidate may qualify, the application of the definition of "candidate" in Section 99.011 would render ineffectual and abortive the provisions of Section 99.161(2)(d). The result of such construction would permit the candidate, so long as he has not announced for office, to avoid the requirement to comply with any provision of Section 99.161, and until such announcement shall or may be made, those interested in him may urge the candidacy without restraint and thereby completely thwart the legislative intent regulating the matter. Such is the contention of the Attorney General, vigorously pressed in argument before this court and in his excellent brief filed in the cause.
This argument in support of such construction is persuasive and forceful and, if adopted, we may reasonably speculate would fortify and complement the wholesome regulation of candidacy expenditures. Upon a careful study of the act, however, we are unable to go along with it.
In the consideration and amendment of F.S. Section 99.161, F.S.A., the legislature must have carefully considered its general revision of the election code both in 1951 and in 1955, when it added provisions to Section 99.161 designated (2)(d). The finished work carries the earmarks of a thorough consideration of the regulations adopted. We are unwilling to believe that in the revision of these laws it overlooked the definition of "candidacy" retained in F.S. Section 99.011, F.S.A., nor are we satisfied that the legislature failed to evaluate the meaning and impact of that definition on the regulatory provisions. On the contrary we must hold the retention of the definition was done advisedly.
We approve and adopt the circuit judge's decree, the substantial portion of which we here reproduce:
"The question of whether or not the expenditure of money for, or the publication of, the advertisement in question is contrary to law turns upon a construction of the following statutes:
"F.S. Section 99.011, F.S.A.,
"`The word "candidate" shall mean any person who has announced to any person, or to the public, that he is a candidate for a certain office.'
*468 "Section 99.061(2), as amended by Chapter 29936, Laws of Florida 1955,
"`Candidates for nomination of any recognized political party for the office of governor and all other candidates for state offices are required to file their qualification papers and pay their qualification fees and party assessment to the secretary of state at any time after noon of the first filing date, which shall be the seventy-seventh day prior to the first primary, but not later than noon of the sixty-third day prior to the date of the first primary in the year in which any primary is held.'
"Subsection 99.161(2)(d), as amended by Chapter 29936, Laws of Florida 1955,
"`No candidate for nomination or any committee, organization or person on his behalf shall, prior to noon of the first filing date for the nomination which said candidate seeks, make any expenditures for campaign purposes or for the promotion of his candidacy other than for personal travel and incidental expenses, and all expenditures as defined in this section shall be reported as required by this section from the date of public announcement of his candidacy or from the date of filing of his qualification papers, whichever date shall occur first; provided that such candidate or committees or organizations shall be permitted to reserve but make no use of advertising time and space and office facilities prior to qualification.'
Subsection 99.161(4) (a),
"`No contribution or expenditure of money or other thing of value, nor obligation therefor, including contributions, expenditures, or obligations of the candidate himself or of his family, shall be made, received, or incurred, directly or indirectly, in furtherance of the candidacy of any candidate for political office in the state except through the duly appointed campaign treasurer or deputy campaign treasurers of the candidate.'
Subsection 99.161(7),
"`No expenses shall be incurred by any candidate for election or nomination to political office, or by any person, corporation, or association in his behalf, or in furtherance or aid of his candidacy, unless prior to the incurring of the expense a written order shall be made in and upon the form prescribed, and signed by the campaign treasurer of the candidate authorizing the expenditure, and no money shall be withdrawn or paid by any campaign depository from any campaign fund account except upon the presentation of the written order, so signed, accompanied by the certificate of the person claiming the payment, which certificate shall state that the amount named in the order, or such part thereof as may be claimed, naming the amount claimed, is justly due and owing to the claimant, that the order truly states all of the purposes for which the indebtedness was incurred, and that no person other than the claimant is interested, directly or indirectly, in the payment of the claim, and unless an order for payment in and upon the form prescribed, and signed by the campaign treasurer or deputy treasurer, is presented to the campaign depository; provided that any such authorization may be issued by the campaign treasurer to the candidate for traveling expenses still to be incurred. The order authorizing such expenditure, the certificate, and the order for payment shall be on the same piece of paper.' (Insertion: F.S. Section 104.371, F.S.A., added to the election code by Chapter 28156, Laws of Florida, 1953; "political advertisement is an expression by any mass media, attracting public attention, whether radio, television, newspaper, magazine, periodical, direct mail, display or by means other than the spoken word in direct conversation *469 which shall transmit any idea furthering the candidacy for public office of any person.")
"The first rule of statutory construction is that, if the language of the statute is clear and admits of but one meaning, the Legislature should be held to have intended what it has plainly expressed, and there is no room for construction. State ex rel. Bie v. Swope, 159 Fla. 18, 30 So.2d 748 and authorities there cited.
"A statutory definition of a word is controlling and will be followed by the Courts. Greenleaf & Crosby Co. v. Coleman, 117 Fla. 723, 158 So. 421, First National Bank of Miami v. Florida Industrial Commission, 154 Fla. 74, 16 [So.2d] 636.
"Applying the foregoing principles the Court is of the opinion that the statute before it has a plain and definite meaning. Chapter 99, Florida Statutes, is entitled `Candidates, Campaign Expenses and Contesting Elections.' The first section of this chapter defines a candidate as `any person who has announced to any person, or to the public, that he is a candidate for a certain office.' Obviously this is a rather restricted definition, but it is one which has been a part of our statute law for more than forty years, and one with which the Court must assume that the members of the Legislature were familiar.
"It will be observed that throughout Section 99.161 the word `candidate' is used to designate the persons whose activities, or in behalf of whom the activities of others, are regulated. If we substitute the statutory definition of `candidate' for that word wherever it appears, each subsection, each sentence, of the statute has a definite, clear, unambiguous meaning.
"The conclusion is inescapable that the statute prohibits advertising only by or on behalf of those persons who have announced their candidacy for office.
"It is vigorously argued by the Attorney General that this construction of the statute will defeat the legislative intent and that, for this reason, it should not be adopted.
"The Legislature is charged with the duty of enacting statutes prohibiting all undue influence upon elections from power, bribery, tumult or other improper practices. Section 26, Article III, Florida Constitution, F.S.A. The statute under consideration was obviously enacted for the purpose of carrying out this constitutional duty. But the Legislature has expressed in the statute, in unmistakable language, that which it considers necessary to comply with the constitutional mandate. The Courts have no authority to add to or take from what the Legislature has done. The duty of the Courts is to construe and apply. It may well be that the members of the Legislature did not visualize an active advertising campaign by numerous citizens to induce an individual to become a candidate. If this be assumed, it does not give the Courts the power to add to the statute, or to make it cover a situation which is clearly not within the meaning of the language used.
"On the other hand it may well be that the legislature, confronted with the duty of enacting a statute preserving the purity of elections, deemed it sufficient to regulate the expenditure of money in advertising in behalf of announced candidates. This argument may be fortified by a consideration of the fact that the Legislature did fix a date far in advance of the primary elections by which each person to be voted upon in the primary must qualify as a candidate with a designated public officer and thus announce his candidacy if he has not previously done so. Thereafter he and his candidacy come within the operation of the statute. If the statute, in its present form, fails to accomplish its purpose, the Legislature is the instrumentality of government to make the necessary corrections. It might do this by requiring candidates to qualify a longer period of time before the date of the elections. It might do this by changing the definition of the word `candidate' as used in the statute. It might devise other means *470 of making the statute better serve its intended purpose if, in practical operation, the statute in its present form is found to be insufficient.
"It may be well to state that the Court is not at this time passing upon a situation in which a person desiring to be elected to public office may attempt to evade the statute by making secret, private or confidential announcement of his candidacy and conspire with others to promote and conduct a campaign without complying with the statute. If an individual has made an announcement to any person of his candidacy, he comes within the statute no matter how confidential such announcement may be. Nor is the Court called upon at this time to determine what may or may not constitute an `announcement'.
"Having reached the conclusion that the acts described in the complaint in this cause are not in violation of the statute as written, the Court does not make any decision as to the constitutional validity of the statute."
Affirmed.
TERRELL, C.J., and THOMAS and THORNAL, JJ., concur.