118 So.2d 664 (1960)
James T. VOCELLE, Walter Lightsey, and Stuart L. Moore, As Chairman and Members, Respectively, Constituting the Florida Industrial Commission, a State Agency, and Ray E. Green, As Comptroller of the State of Florida, Appellants,
v.
KNIGHT BROTHERS PAPER COMPANY, Inc., a Florida Corporation; Massey Motors, Inc., a Florida Corporation; Miller Electric Company of Florida, a Florida Corporation, Appellees.
No. B-351.
District Court of Appeal of Florida. First District.
January 26, 1960.
Rehearing Denied February 18, 1960.
*665 Richard W. Ervin, Atty. Gen., Robert J. Kelly and Joseph C. Jacobs, Asst. Attys. Gen., for Ray E. Green, State Comptroller.
Burnis T. Coleman and Lawrence Kanzer, Tallahassee, for Florida Industrial Commission, appellants.
Caldwell, Parker, Foster, Madigan, Oven & Moriarty, Tallahassee, for appellees.
Allen, Dell, Frank & Trinkle, Tampa, Holland, Bevis, McRae & Smith, Bartow, Bryant, Martin & Kibler, Lakeland, Arnold & Matheny, Orlando, Counts Johnson, Tampa, and Robert L. Staufer, Winter Haven, as amici curiae.
PER CURIAM.
The members of the Florida Industrial Commission and the State Comptroller, defendants below, bring this appeal to review a declaratory decree of the Circuit Court of Leon County, Florida, Taylor, Circuit Judge, construing certain provisions of the Unemployment Compensation Law of Florida (Ch. 443, Florida Statutes, as amended by Ch. 59-55, Laws of Florida, 1959, F.S.A.), thereby determining the rights of the plaintiffs and other like-situated employers.
The pertinent part of the decree provides:
"In the determination of eligibility for unemployment compensation benefits under the provisions of Section 443.05, Florida Statutes, as amended by Chapter 59-55, Laws of Florida, 1959, the Defendant Florida Industrial Commission shall determine `average weekly wages' solely by the formula or definition set forth in Section 443.04(2) (d) 1. Florida Statutes, as amended by Chapter 59-55, Laws of Florida, 1959, for all benefit years prior to July 1, 1960, and by the formula or definition set forth in Section 443.04(2) (b), Florida Statutes, as amended by Chapter 59-55, Laws of Florida, 1959, for all benefit years beginning on and after July 1, 1960 * * *"
The facts were not in dispute and the basis for the above conclusions of law, with which we concur, is set out in a Memorandum Opinion prepared by the learned trial judge at the request of the parties.
Chapter 59-55, Laws of Florida 1959, amends Section 443.04, Florida Statutes, F.S.A., in the following particulars pertinent to this appeal:
"(2) (d) Notwithstanding the provisions of paragraph (a), (b), and (c) of this subsection, the weekly benefit amount, the average weekly wages, and total amount of benefits available with respect to all benefit years beginning on and after July 1, 1959, but prior to July 1, 1960, shall be determined and shall be payable in accordance with the following:
"1. The weekly benefit amount shall be one-half of the average weekly wages of the claimant, but not more than $33.00. The average weekly wages shall be one-thirteenth of the total wages paid to the claimant in that calendar quarter of his base period in which his wages for insured employment were highest. * * *" (Emphasis supplied.)
Chapter 59-55, Laws of Florida 1959, also amends Section 443.05(5), Florida Statutes, in the following particulars pertinent to this appeal:
"An unemployed individual shall be eligible to receive benefits with respect to any week only as the Commission finds that:
"(5) He has been paid wages for insured work equal to twenty times his average weekly wages during his base period; provided, that no unemployed *666 individual shall be eligible to receive benefits if his average weekly wages is less than twenty dollars ($20.00)." (Emphasis and capitalization supplied.)
The cited amendatory act fixes July 1, 1959, as the effective date thereof, thus leaving in effect until that date the prior provisions of Section 443.05(5), Florida Statutes, F.S.A.[1]
Following adoption of the 1959 act making the above-quoted changes in the statutes, the Florida Industrial Commission on May 20, 1959, and June 15, 1959, issued bulletins and directives construing the amendatory act, and particularly the last quoted section, stating in these simple words: "* * * with respect to all benefit years beginning on or after July 1, 1959, but prior to July 1, 1960, the average weekly wages shall be one-thirteenth of the high quarter wages."
Application of the statute as thus construed resulted in the denial of a substantial number of claims for unemployment benefits filed by persons who felt that they were, or should be, within the protection of the statute providing such benefits. The Commission reconsidered its previous action and on August 25, 1959, issued a bulletin under which the "average weekly wages" to be used in measuring an applicant's qualification to receive benefits may be determined by applying either of two standards: (1) The formula previously adopted of dividing the wages earned during the highest quarter of the base period by thirteen, or (2) if this formula did not result in the applicant being eligible for benefits, eligibility should then be tested by dividing the total of wages earned during the base period by the number of quarters in which wages were earned multiplied by thirteen.
It is obvious that under the August 25, 1959 bulletin some persons would qualify under the first formula who could not do so under the second, and conversely, that some could qualify under the second who could not do so under the first. It results that the application of the tests provided by the bulletin of August 25, 1959, imposes a greater burden upon the unemployment compensation insurance fund.
The plaintiff employers (appellees) insist that the construction first placed by the Commission upon the amendatory act is correct and furnishes the sole criterion by which eligibility to receive payments from the unemployment insurance fund may be determined. They urge that the definition of "average weekly wages" as contained in the amendment to Section 443.04 must be used in construing the amended Section 443.05; that the Commission is bound by that definition and has no power to place any other construction on the statute.
The appellant Commission contends that the definition of "average weekly wages" as contained in amended Section 443.04 is not applicable in determining the phrase "average weekly wages during his base period", as contained in amended Section 443.05; that the addition of the words "during his base period" indicates a legislative intent to modify the meaning which would otherwise be placed upon the words "average weekly wages" and that, consequently, for the purpose of determining eligibility of applicants it may properly take into account earnings of the employee during other quarters of the base period. In this connection the Commission points out that Section 443.04 in which the definition "average weekly wages" is found deals with the amount and duration *667 of benefits, and Section 443.05 deals with eligibility to receive benefits. The Commission also seeks to justify its position by pointing out that several thousand applicants for benefits must be denied assistance if the original construction is adhered to and that the beneficent purposes of the statute will be thwarted. They express the view that the Legislature did not intend that this large number of unemployed persons should be denied relief and that they are carrying out the basic and fundamental legislative purpose when they adopt a construction of the statute which increases the number of persons entitled to participate in the distribution of the unemployment compensation fund.
When the words of a statute are plain and unambiguous the courts must give to them their plain meaning. When a statute contains a definition of a word or phrase that meaning must be ascribed to the word or phrase whenever repeated in the same statute unless a contrary intent clearly appears. Every statute must be construed as a whole and the legislative intent determined, if it be possible, from what is said in the statute. If the language of a statute is clear and not entirely unreasonable or illogical in its operation, the court has no power to go outside the statute in search of excuses to give a different meaning to words used in the statute. A statute should be so construed as to give a meaning to every word and phrase in it and, if possible, so as to avoid the necessity of going outside the statute for aids to construction.
Applying these simple rules the legislative intent in enacting Chapter 59-55 is clear and unambiguous. The definition of "average weekly wages" contained in the amendment to Section 443.04 is controlling in determining the meaning of that phrase as used in the amendment to Section 443.05.
The argument that the phrase to be construed in amended Section 443.05 is "average weekly wages during his base period" rather than "average weekly wages" is entirely untenable for several reasons. The obvious intent of the Legislature was that the words "during his base period" should relate to the period within which the employee must have "been paid wages for insured work equal to twenty times his average weekly wages." Any other construction would leave entirely unlimited the period of time in which the applicant must have earned "twenty times his average weekly wages."
If we should give a literal construction to the words "average weekly wages during his base period", the entire first part of the sentence would be made meaningless. The "base period" is necessarily a year under the statute. Strict and literal determination of the "average weekly wages" during that year would necessitate dividing the entire earnings of the year by fifty-two  the number of weeks in a year. In every instance the earnings during a year would be more than twenty times the result of dividing such earnings by fifty-two. In order to avoid this irrational conclusion the Commission would divide the earnings during the base period by thirteen times the number of quarters in which there were insured earnings and call the result "average weekly wages during his base period." We can find no justification in the statute for substituting the words "during those quarters of the base period in which insured wages were earned" for the words "during his base period." This would be the effect of adopting the Commission's argument on this point.
Equally unjustified is the construction advanced by amici curiae that the "average weekly wages during his base period" should be adopted as the phrase to be defined and should be construed to mean the average of the wages earned during the weeks in the base period during which insured wages were earned. This construction not only does violence to the language here used but is contrary to the obvious intent of the statute as a whole. *668 The use of actual wage experience in determining benefits and eligibility is the goal toward which the Legislature is obviously striving, and for years beginning on and after July 1, 1960, weeks actually worked will be used in determining "average weekly wages" as is required by paragraph (b) of subsection (2) of Section 443.04 as amended by Chapter 59-55 but it is equally obvious from an examination of the statute as a whole that the Legislature did not intend to use actual weekly experience prior to the time that the Commission would have reports disclosing this experience.
Perhaps the greatest indication of error in the action of the Commission is the fact that the Commission has attempted to set up two separate and distinct formulae to measure the eligibility of applicants for benefits and the second formula, the one under attack, is to be applied only if the applicant fails to qualify under the first. The Legislature obviously intended to fix a single set of standards for measuring the eligibility of the unemployed who seeks payments from the unemployment insurance fund. The Commission has attempted to set up two and to apply the second only in those cases in which the applicant cannot qualify under the first. The statute vests no such authority in the Commission.
Inasmuch as the benefits paid to claimants by appellant Florida Industrial Commission were paid solely because of the application of the directive of August 25 hereinabove referred to, which directive was held to be erroneous, none of such benefits should be charged to any employer account and must therefore be noncharged.
We wish to acknowledge that most of what we have said is taken substantially from the excellent Memorandum Opinion of the learned trial judge with which we concur. Such painstaking labor clarifies the issues and greatly relieves the burden of this court and we are grateful for it.
We are not unmindful of the rule that a liberal construction should be given to legislation of the character involved to the end that the benefits intended thereby shall not be withheld. And we are cognizant of the power and duty of the authority administering such laws to initially interpret them to that purpose when the provisions are vague, indefinite, or contradictory, neither of which conditions exists here. The rule is equally well established that neither the courts nor the administrative agencies have power to modify the plain purpose and intent of the Legislature as expressed by the language employed in the statutes and thus to bring about what may be conceived in the minds of the judges or the administrators to be a more practical or proper result.
Affirmed.
WIGGINTON, Chief Judge, and STURGIS and CARROLL, DONALD, JJ., concur.
NOTES
[1] The eligibility conditions under subsection (5) of Section 443.05, prior to the 1959 amendment rend:

"(5) He has been paid wages for insured work in at least two calendar quarters of his base period equal to or more than one and one-quarter times the wages paid in that quarter of his base period in which such wages were highest; provided, that no unemployed individual shall be eligible to receive benefits if he has been paid total wages amounting to less than two hundred dollars in his base period."