William J. Page Secretary Department of Health and Rehabilitative Services Tallahassee
QUESTION:
Is a landlord who rents housing to the public on a first come, first served basis, regardless of occupation and to migrant, temporary, or seasonal workers by accident and not by design or as a condition of employment, subject to the licensure requirement of s. 381.432, F. S., whenever five or more of his tenants happen to be migrant, temporary, or seasonal workers?
SUMMARY:
Facilities not designed for and primarily established, operated, or used as living quarters for five or more seasonal, temporary, or migrant laborers or workers are not `migrant labor camps,' as defined by s. 381.422(1), F. S., and do not have to obtain a migrant labor camp license from the Department of Health and Rehabilitative Services as provided for in s. 381.432, F. S.
Your question is answered in the negative.
Section 381.422, F. S., provides the statutory definition of a migrant labor camp for the purposes of ss. 381.432-381.482, F. S., as follows:
 (1) `Migrant Labor Camp.' — One or more buildings, structures, tents, trailers, or vehicles, or any portion thereof, together with the land appertaining thereto, established, operated, or used as living quarters for five or more seasonal, temporary, or migrant workers, whether or not rent is paid or reserved in connection with use or occupancy of such premises. (Emphasis supplied.)
Section 381.432, F. S., provides:
 No person shall establish, maintain, or operate any migrant labor camp in this state without first obtaining a license therefor . . . and unless such license is posted and kept posted in the camp to which it applies at all times during maintenance or operation of the camp. (Emphasis supplied.)
The above-quoted sections, in my opinion, apply only to facilities that are designed for and primarily established, operated, or used as living quarters for five or more seasonal, temporary, or migrant workers. It is evident from your letter of inquiry that the landlord in question rents housing to the general public and does not designedly let out living quarters to seasonal or migrant laborers or workers or in any way operate or propose to operate a migrant labor camp. The facility and operation you describe cannot reasonably be considered or deemed to be a migrant labor camp within the purview of ss. 381.432-381.482, F. S. Moreover, a statutory definition of a word or phrase for the purposes of the statute in which such term is defined is controlling, and where a statute defines a term, that definition and meaning must be ascribed to such term whenever repeated or used in the same statute, unless a contrary legislative intent clearly appears on the face of such statute. Ervin v. Capital Weekly Post,97 So.2d 464 (Fla. 1957); Vocelle v. Knight Brothers Paper Co.,118 So.2d 664 (1 D.C.A. Fla., 1960). The statute in terms refers only to migrant labor camps which are established, operated, and used as living quarters for five or more seasonal or migrant laborers, regardless of whether rent is reserved in connection with the use or occupancy of the facilities by such migrant laborers. It does not purport to include facilities rented to the general public such as are described in your inquiry. One factor in determining what is a migrant labor camp would be its primary function or the use to which it is designed or intended to be put, that is providing living quarters for five or more seasonal, temporary, or migrant workers. A determination based upon the above factor and other factors may have to be made in any given situation, but I must conclude that the intent or purpose of s. 381.432 is not to require a facility that `rents housing to the public on a first come, first served basis, regardless of occupation and to migrant, temporary, or seasonal workers by accident and not by design or as a condition of employment' to obtain a license for a migrant labor camp from your department.
Prepared by: Walter Kelly, Assistant Attorney General