Neal D. Bowen City Attorney Sanibel
QUESTION:
Must development on property owned by a district school board, situated within the municipal limits and used for school purposes, comply with a municipal comprehensive land-use plan and development regulations thereto and obtain development permits thereunder, as adopted pursuant to the Florida Logal Government Comprehensive Planning Act (s. 163.3161, F. S., et seq.)?
SUMMARY:
Development on real property owned by a district school board situated within a municipality must comply with that municipality's comprehensive land-use plan as adopted pursuant to the Florida Local Government Comprehensive Planning Act, provided the local land-use plan or the development permits required by it do not relate to or regulate the same subject as the State Uniform Building Code for Public Educational Facilities Construction.
The Florida Local Government Comprehensive Planning Act, ss.163.3161-163.3211, F. S., was adopted by the Legislature in 1975 `to utilize and strengthen the existing role, processes, and powers of local governments in the establishment and implementation of comprehensive planning programs to guide and control future development.' Section 163.3161(2). The act requires that each municipality and each county adopt a comprehensive plan, the minimum requirements of which are set forth in the act. Section 163.3167. See s. 163.3177, which sets forth the required and optional elements of the comprehensive plans.
According to the materials enclosed with your letter of inquiry, the City of Sanibel on July 19, 1976, adopted a comprehensive land-use plan in accordance with the provisions of the Florida Local Government Comprehensive Planning Act of 1975; the city's plan sets forth substantive standards and procedural guidelines for all development on Sanibel and generally requires that an entity, building or making any material change in the use or appearance of any structure or land, obtain a development permit from the city. During one conversation with this office, you stated that the city's land-use plan does not regulate the same subject as the State Uniform Building Code for Public Educational Facilities Construction, see s. 235.26, F. S.; rather, as you stated in a subsequent letter, Sanibel's land-use plan, adopted pursuant to ss. 163.3161-163.3211, F. S., is distinct from the city's building code adopted under part VI of Ch. 553, F. S., and development permits issued under the plan do not apply to conventional construction standards such as contemplated by s. 235.26, but rather relate to zoning and land-use development activity as set forth in Ch. 380, F. S., and s. 163.3161, et seq. You further stated that permits under the standard building code are issued under the authority of a different ordinance and enabling statutes and are administered by different municipal departments.
Such a distinction between the city's land-use plan and its building code must be observed with respect to school facilities. Section 235.26(1), F. S., clearly provides that all educational facilities constructed by a school board shall incorporate the State Uniform Building Code for Public Educational Facilities Construction and `shall be exempt from all state, county, district, municipal, or local building codes, interpretations, building permits and assessments of fees for building permits, and ordinances. . . .' This subsection was added to s. 235.26 in 1977 by Ch. 77-458, Laws of Florida, subsequent to the adoption of the Florida Local Government Comprehensive Planning Act in 1975 and would clearly prevail over any inconsistencies that might exist under ss. 163.3161-163.3211, F. S., or a local land-use plan adopted thereunder. Cf. Albury v. City of Jacksonville Beach,295 So.2d 297 (Fla. 1974) (last expression of Legislature will prevail in cases of conflicting statutes). See s. 235.26(9), which states:
 The State Uniform Building Code for Public Educational Facilities Construction shall have the force and effect of law and shall supersede any other code adopted by a board or any other building code or ordinance for the construction of educational facilities, whether at the local, county, or state level, and whether adopted by rule or legislative enactment. All special acts or general laws of local application are hereby repealed to the extent that they conflict with [s. 235.26, F. S.].
See also s. 235.26(10), which, pursuant to s. 11(a)(21) of Art. III of the State Constitution, prohibits the enactment after July 1, 1974, of any special or general law of local application which proposes to amend, alter, or contravene any provisions of the State Building Code adopted under the authority of s. 235.26. Cf. AGO 075-98. It is therefore assumed for the purposes of this opinion that the city's land-use plan and development permits required thereunder adopted pursuant to the Comprehensive Planning Act do not apply to or regulate the same subject as the State Uniform Building Code for Public Educational Facilities Construction.
Section 163.3161(5), F.S., sets forth the Legislature's intent that `adopted comprehensive plans shall have the legal status set out in this act and that no public or private development shall be permitted except in conformity with comprehensive plans, or elements or portions thereof, prepared and adopted in conformity with this act.' (Emphasis supplied.) Similarly, s. 163.3194(1), F. S., provides:
 After a comprehensive plan or element or portion thereof has been adopted in conformity with this act, all development undertaken by, and all actions taken in regard to development orders by, governmental agencies in regard to land covered by such plan or element shall be consistent with such plan or element as adopted. All land development regulations enacted or amended shall be consistent with the adopted comprehensive plan or element or portion thereof. (Emphasis supplied.)
Governmental agency, as used in this act, is defined in pertinent part to include `[a]ny school board or other special district, authority, or governmental entity.' (Emphasis supplied.) Section163.3164(8)(d), F. S. When a statute contains a definition of a word or phrase, that meaning is controlling and must be ascribed to the word or phrase whenever repeated in the statute, unless a contrary intent clearly appears. Vocelle v. Knight Brothers Paper Co., 118 So.2d 664 (Fla. 1960); Ervin V. Capital Weekly Post, Inc., 97 So.2d 464 (Fla. 1957); and Richard Bertram Co. v. Green,132 So.2d 24 (3 D.C.A. Fla., 1961). Thus, pursuant to s.163.3194(1), F. S., all development undertaken by, and all action taken in regard to development orders by, school boards, in regard to land covered by the plan or element, shall be consistent with the plan or element. The language of the statute is clear and unambiguous and indicates the Legislature's intent that school boards may be included within a local government's comprehensive plan. See s. 163.3177(7)(f), F. S., which provides in pertinent part that the land-use plan may include `[a] public buildings and related facilities element showing locations and arrangements of civic and community centers, public schools, hospitals, libraries, police and fire stations, and other public buildings.' See also s.163.3177(6)(a), which states in part that the comprehensive plan shall include `a future land use plan element designating proposed future general distribution, location and extent of the uses of land . . . public buildings and grounds, other public facilities, and other categories of the public and private uses of lands.' When the legislative intent as evidenced by the statute is plain and unambiguous, there is no necessity to resort to statutory construction or interpretation, and effect need only be given to the plain meaning of its terms. State v. Egan, 287 So.2d 1 (Fla. 1973). See also Reino v. State, 352 So.2d 853 (Fla. 1977); Ross v. Gore, 48 So.2d 412 (Fla. 1950) (when language of statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory construction, and the statute must be given its plain and obvious meaning); Ervin v. Capital Weekly Post, supra; and Vocelle v. Knight Brothers Paper Co., supra.
In village of North Palm Beach v. School Board of Palm Beach County, 349 So.2d 683, 683-684 (4 D.C.A. Fla., 1977), cert.denied, 354 So.2d 985 (Fla. 1977), appeal dismissed,358 So.2d 133 (Fla. 1978), the court, in discussing the applicability of local zoning to a district school board, stated:
 In cases of governmental disputes as to whether zoning requirements of one governmental body applies [sic] to another governmental body when seeking to use land contrary to applicable zoning regulations, the balancing-of-public-interests test (sometimes referred to as the balancing-of-competing-public-interest test), in the absence of statutory authority, allows for the greatest flexibility and fairness in determining the issue. Therefore, we adopt the balancing-of-public-interests test for resolving zoning conflicts between different governmental bodies . . . . (Emphasis supplied.)
The court applied the balancing-of-public-interest test in the absence of statutory authority. See also City of Temple Terrace v. Hillsborough Association for Retarded Citizens, 322 So.2d 571 (2 D.C.A. Fla., 1975), affirmed, 332 So.2d 610 (Fla. 1976), and Orange County v. City of Apopka, 299 So.2d 652 (4 D.C.A. Fla. 1974). With respect to the instant inquiry, however, there is ample statutory authority indicating that school boards as governmental agencies are subject to local comprehensive land-use plans adopted pursuant to the Florida Local Government Comprehensive Planning Act. Moreover, while s. 235.26, F. S., expressly exempts educational facilities constructed by a school board from any municipal or local building code, interpretations, building permits or fees, and ordinances, no provision which generally exempts school boards from the provisions of ss.163.3161-163.3211, F. S., other than to the extent provided in s. 235.26, has been brought to my attention. Cf. s. 235.193, F. S., requiring the coordination of planning between school boards and local governing bodies to ensure that plans for the construction and operation of public educational facilities are coordinated in time and place with plans for residential development and concurrent with other necessary services.
Therefore, I am of the opinion that, until and unless judicially determined to the contrary, development on property owned by a district school board which is situated within a municipality must comply with the municipality's comprehensive land-use plan adopted pursuant to the Florida Local Government Comprehensive Planning Act, provided that the local land-use plan or the development permits required thereunder do not relate to or regulate the same subject as the State Uniform Building Code for Public Educational Facilities Construction.
Prepared by:
Joslyn Wilson Assistant Attorney General