Mr. Ernest Ellison Auditor General Post Office Box 1734 Tallahassee, Florida 32301
Dear Mr. Ellison:
This is in response to your request for an opinion on substantially the following question:
 IS A SCHOOL BOARD LEGALLY AUTHORIZED TO CONTRACT WITH AN APPOINTIVE SUPERINTENDENT TO PROVIDE HIM WITH AN AUTOMOBILE FOR PERSONAL AND BUSINESS USE IN ADDITION TO HIS REGULAR SALARY?
You state that during the audit of the Duval County School Board you determined that the school board contracted with the superintendent to provide him with a publicly owned automobile for his personal and business use in addition to his regular salary. According to the information supplied to this office, the superintendent of the Duval County schools is an appointive position. See generally, s 5, Art. IX, State Const., which provides for the election of the superintendent of schools except `when provided by resolution of the district school board, or by special law, approved by vote of the electors, the district school superintendent in any school district shall be employed by the district school board as provided by general law.' District school boards are authorized to enter into contracts of employment with such appointive superintendents and to adopt rules and regulations relating to their appointment. See, s 230.321(2), F.S. Section 230.321(3), F.S., provides that the school board `shall pay to the superintendent a reasonable annual salary.' (e.s.) Under the terms of one contract entered into by the Duval County School Board and the superintendent of schools, the superintendent was paid an annual salary of $46,000.00 for each year for a 3 year period commencing February 1, 1976 and terminating January 31, 1979; said salary to be paid in `equal installments in accordance with the policy of the Board governing payment of other professional staff members in the District.' See, Paragraph 2 of the employment contract for the superintendent entered into January 5, 1976. Pararagraph 7 of the contract provides:
 As additional compensation hereunder, the Board shall provide the Superintendent with an automobile for use in the performance of his official duties and for personal use during his employment under this contract. All expenses for maintenance and operation of said automobile shall be paid for by the District except the Superintendent shall be responsible for cost of gasoline consumed for personal trips outside of the school district.
The second contract in question in the instant inquiry covered the period from February 1, 1979 to June 30, 1982, and also required that the superintendent be provided with the use of an automobile, together with the operating expenses thereof, for personal and business use. See, Paragraph 7 of employment contract dated July 17, 1978. And see, Paragraph 2 of the contract which states that the superintendent shall be paid an annual salary of $48,300 the first year of the contract and thereafter at the annual adjusted rate set by the Board pursuant to Paragraph 9 of the contract. You state that you are concerned about the propriety of a school board entering into contracts which provide the superintendent with the use of a publicly owned automobile for his personal and business use and therefore have requested my opinion on this matter.
Your inquiry appears to be prompted in part by the provisions of s 230.03(2), F.S., which state in pertinent part that the district school boards may exercise any power for educational purposes
except as otherwise provided by the State Constitution or law. This office has previously stated that school boards have no inherent or common law powers but rather possess only those powers which have been expressly or impliedly conferred by statute. See,e.g., AGO's 080-102, 080-42, 076-61 and 075-148 stating that the powers of school boards are limited by law and the extent of their powers may be enlarged or limited only by the Legislature. Seealso, Harvey v. Board of Public Instruction, 133 So. 868 (Fla. 1931); Buck v. McLean, 115 So.2d 764 (1 D.C.A. Fla., 1959). Moreover, subsection (5) of s 230.22, F.S., provides that the school board `may perform those duties and exercise those responsibilities which are assigned to it by law or by regulations of the state board and, in addition thereto, those which it may find to be necessary for the improvement of the district school system in carrying out the purposes and objectives of the School Code.' (e.s.) And see, AGO 075-256, citing Hopkins v. Special Road Bridge District No. 4, 74 So. 310 (Fla. 1917), for the proposition that where the right to exercise authority is doubtful, the board should not assume that authority. Accord, Harvey v. Board of Public Instruction, supra; Greenberg v. Florida State Board of Dentistry, 297 So.2d 628 (1 D.C.A. Fla., 1974), cert. dismissed, 300 So.2d 900 (Fla. 1974). You therefore inquire as to whether s 230.03(2), F.S., authorizing the school board to exercise any power for educational purposes except as otherwise provided by the Constitution or by law, vests the board with sufficient `home rule' powers to authorize the board to contract with the superintendent to provide him with the use of an automobile for personal and business use together with the expenses for maintenance and operation thereof.
`Educational purposes' for purposes of s 230.03(2), F.S., is defined and limited to those activities or powers `exercised in the establishment and maintenance of courses, classes, institutions, and services adequate to meet the educational needs of all citizens of the district.' The parameters of the foregoing statutory language have not been judicially determined; generally, however, when a statute contains a definition of a word or phrase, that meaning must be ascribed to that word or phrase whenever repeated in the statute unless a contrary intent clearly appears. See generally, Ervin v. Capital Weekly Post, Inc.,97 So.2d 464 (Fla. 1957); Richard Bertram Co. v. Green,132 So.2d 24 (D.C.A. Fla., 1961); Vocelle v. Knight Bros. Paper Co.,118 So.2d 664 (1 D.C.A. Fla., 1960). Thus in considering what powers a school board possesses under s 230.03(2), I must conclude that the Legislature, in statutorily defining `educational purposes,' intended to confine the exercise of the school board's authority to matters relating to `courses, classes, institutions and services' in order to meet the educational needs of the school district's citizens. No mention, express or implied, is made regarding the district's authority to freely exercise governmental powers over personnel matters. In the absence of such statutory authorization and in the absence of judicial construction on this issue, I cannot say that the foregoing grant of power authorizes the school board to contract with the school superintendent to provide him with an automobile for his personal and business use together with the expenses for maintenance and operation thereof. Cf., AGO 082-59 stating that the payment of preemployment physical examinations for prospective employees by a district school board was not authorized under a school board's `home rule' powers; and AGO 080-42 which stated, inter alia, that this office could not conclude that s 230.03(2) `per se encompasses the adoption of rules regarding the selection of the chairman of the school board or limitations on consecutive terms a person may serve as chairman of the board.'
Section 230.231, F.S., provides for the employment of appointive superintendents and authorizes the school boards to pay such superintendents `a reasonable annual salary.' See, s 230.321(3) which sets forth the factors to be considered in determining the amount to be paid. And see, s 230.321(1) and (2), F.S., respectively, authorizing the board to contract with an appointive superintendent and providing that such superintendent is not subject to the provisions of law, general or special, relating to tenure or continuing contracts of other school personnel. Cf., s 230.303, F.S., relating to the salaries of elected superintendents. Pursuant to s 230.23(5)(c), F.S., each school board is required to `[a]dopt a salary schedule or salary schedules to be used as a basis for paying all school employees . . . .' Rule 6A-1.52, F.A.C., requires a school board to adopt a salary schedule for its employees which `shall be the sole
instrument used in determining the annual, monthly, weekly, daily, or hourly compensation for the employees of the board' (e.s.) and further states that all personnel shall be paid in accordance with the payroll period schedules adopted by the school board and included in the official salary schedule. Subsection (5) of the rule provides that `[n]o salary shall be paid differing from the amount to which the employee is entitled under the salary schedule.' See, s 229.041, F.S., stating that the rules and regulations of the state board implementing the Florida School Code, Ch. 228 et seq., have `the full force and effect of law' if within the scope and intent of the statute. See also, s 236.02(3), F.S., requiring each school district participating in state appropriations for the Florida Education Finance Program meet certain requirements which include, inter alia, that `[a]ll personnel shall be paid in accordance with payroll period schedules . . . included in the official salary schedule'; and s 236.02(4), F.S., requiring school boards to `[e]xpend funds for salaries in accordance with a salary schedule or schedules adopted by the school board in accordance with the provisions of law and regulations of the state board.'
The board's authority to fix the annual salary of the superintendent thus appears to refer to (and be limited to) a fixed component payable in fixed amounts over a specific period of time. Providing the superintendent with a publicly owned automobile for his personal use would appear to fall within the definition of additional compensation or fringe benefits or perquisites. See, 70 C.J.S. Perquisite p. 685, defining that term to mean `any profit or pecuniary gain from services beyond the amount fixed as salary or wages'; and Black's Law Dictionary Perquisites, p. 1299, defining `perquisites' as `emoluments or incidental profits attaching to an office or an official position beyond the salary or regular fee.' Cf., s216.011(1)(f), F.S., defining `perquisites' for purposes of Ch. 216 as:
 [T]hose things, or the use thereof, or services of a kind which confer on the officers or employees receiving same some benefit that is in the nature of additional compensation, or which reduces to some extent the normal personal expenses of the officer or employee receiving the same, and shall include, but not be limited to, such things as . . . use of state owned vehicles for other than state purposes . . . .
Compare, s 216.011(1)(n), F.S., defining `salary' for purposes of the chapter to mean `the cash compensation for services rendered for a specific period of time.'
Section 236.29, F.S., requires that the district school fund ( see, s 236.24[1], F.S., describing the sources of the district school fund) shall be expended and disbursed in the district solely for the support of the poublic schools of the district as prescribedby law. See also, s 237.02(3), F.S., which requires that expenditures from the district school fund and all other funds available for the public school program of any district shall be authorized by law. This office has previously stated that express statutory authority must exist before public funds may be used to pay additional compensation over and above salary, or benefits in any form, to public officers and employees. Cf., AGO 071-28 stating, inter alia, that to perform any function for the state or to expend any moneys for the state, the public officer seeking to perform such function or to incur such obligation must point to a constitutional or statutory provision authorizing him to do so. Thus in AGO 078-12 this office concluded that the board of trustees of a community college district was not authorized by law to pay the costs of employees' voluntary physical examinations as the payment of such costs would be in the nature of additional compensation or a fringe benefit or perquisite and the board's authority to fix the compensation of community college personnel was limited to the adoption of salary schedules and fixing the salaries of its employees on the basis thereof. See also, AGO 073-148 in which this office concluded that neither the sheriff nor a county was authorized to pay a plainclothes deputy a clothing and maintenance allowance or to pay a uniformed officer a maintenance allowance in the absence of express statutory authority as such allowances would be perquisites and a `perquisite by its very nature would be an unauthorized public expenditure of public funds for private benefit and, in the absence of absolute clear legislative direction, prohibited by law.'
In AGO 078-114 this office considered whether the board of trustees could furnish the president of a community college with the use of an automobile for his personal and business use together with all operating expenses thereof. In the absence of express or implied statutory authority, this office concluded that the board could not provide the president with the use of such an automobile in addition to the regular salary established by the board. The statute relating to compensation of community college presidents was subsequently amended and now expressly authorizes the board of trustees to furnish the president with the use of a motor vehicle or an allowance in lieu thereof; `[i]f any such vehicle is furnished, the board shall determine and fix the maximum noncollege use of the same.' Section 240.319(3)(n), F.S. No similar provision exists for school boards. I am not award of any statute or rule or regulation of the state board of education which expressly authorizes a school board to furnish the superintendent with an automobile for his personal and business use, nor can I say that the authority to make such payments can necessarily be implied. The statutes and the rules of the state board appear to negate any implied authority which a school board might possess by requiring that all school employees and personnel be paid in accordance with the salary schedules; moreover, Rule 6A-1.52, F.A.C., stipulates that the salary schedule is the sole
basis to be used by the board in determining the compensation of school employees and that no salary shall be paid differing from the amount to which the employee is entitled under such schedule.
Based upon the foregoing, I must therefore conclude that the authority of a district school board to pay an appointed superintendent `a reasonable annual salary' does not include the authority to provide the superintendent with the use of an automobile for his personal and private use together with maintenance and operating expenses therefor. The payment from public funds for furnishing such an automobile is in the nature of additional compensation or a fringe benefit or perquisite and must be expressly authorized by statute or by rule of the state board of education authorized by law. In the absence of such a statutory provision or rule or regulation of the state board, the school board is not authorized by law to enter into a contract with an appointed superintendent to provide the superintendent with a publicly owned automobile, together with the operating and maintenance costs thereof, for his personal and business use in addition to his regular salary established by the board.
Sincerely,
Jim Smith, Attorney General
Prepared by: Joslyn Wilson, Assistant Attorney General