Ms. Hilary U. Albury School Board Attorney The School Board of Monroe County 310 Fleming Street Post Office Drawer 1430 Key West, Florida 33040
Dear Ms. Albury:
This is in response to your request for an opinion on substantially the following question:
 MAY A DISTRICT SCHOOL BOARD EXPEND SCHOOL FUNDS IN PAYMENT OF TUITION FEES FOR DOCTORAL LEVEL COURSES TO FURTHER THE EDUCATION OF ITS SUPERINTENDENT?
According to information furnished this office, the School Board of Monroe County has determined that an `educational purpose' pursuant to s 230.03(2), F.S., exists in improving the educational credentials of the superintendent and has approved the payment of reasonable tuition fees for doctoral level courses designed to further the education of the superintendent through the attainment of a Ph.D. in administration and education. As authority for the above expenditure of school funds by the school board, so-called `home rule' provisions of s 230.03(2), F.S., are cited. Your letter further indicates that the Auditor General's Office has questioned the school board's legal authority to pay the tuition fees and has suggested that you seek an opinion from this office.
This office recently issued two opinions in which the so-called home rule power of school boards was considered in determining whether a particular expenditure of school funds was authorized. In both opinions it was concluded that the particular expenditures at issue therein were unauthorized. In AGO 082-59, it was opined that in the absence of express or necessarily implied statutory authorization, a district school board may not lawfully expend school funds for preemployment physical examinations for prospective employees whose duties will require physical exercison. In AGO 082-60, it was opined that the authority of a district school board to pay an appointed superintendent `a reasonable annual salary' did not include the authority to provide the superintendent with the use of an automobile for his personal and private use and in the absence of a statutory provision, or rule or regulation of the State Board of Education authorized by law expressly authorizing the same, a district school board is not authorized by law to enter into a contract with an appointed superintendent to provide the superintendent with a publicly-owned automobile, together with the operating and maintenance costs thereof, for his personal and business use in addition to his regular salary established by the board.
In short, this office has consistently taken the position that school boards have no inherent or common law powers but rather only poossess those powers which have been expressly as impliedly conferred by statute and if there are any doubts as to existence of authority, it should not be assumed. See, in addition to the above opinions, AGO's 081-69, 080-102, 080-42, 076-61, 075-148 and authorities cited therein. Thus, contrary to the view that the expenditure is authorized since there is no Florida Statute or State Board Rule which prohibits a district school board from paying tuition for the superintendent, it has been and still is the opinion of this office that the expenditure is unauthorized unless there is a specific statute or valid rule which authorizes
such an expenditure.
The statutory provision cited as allegedly bestowing so-called home rule powers upon school boards broad enough to encompass the payments at issue herein is s 230.03(2), F.S., which states the following:
 In accordance with the provisions of s. 4(b) of Art. IX of the State Constitution, district school boards shall operate, control, and supervise all free public schools in their respective districts and may exercise any power for educational purposes except as otherwise provided by the State Constitution or law. For purposes of this section, `educational purposes' means any activity or power exercised in the establishment and maintenance of courses, classes, institutions, and services adequate to meet the educational needs of all citizens of the district. (e.s.)
See also, subsection (1) of s 230.03, F.S., which, in pertinent part, provides that `[a]ll actions of district school officials shall be consistent and in harmony with state laws and with rules and minimum standards of the state board.'
The breadth of the foregoing provisions has not been judicially determined. However, when the Legislature in 1978 amended s 230.03(2), F.S., to provide that district school boards `may exercise any power for educational purposes except as otherwise provided by the State Constitution or law,' (e.s.) it also expressly defined and limited for purposes of s 230.03 the phrase `educational purposes.' Chapter 78-86, Laws of Florida. The general rule in construing a statute is that when a statute defines words used therein, the statutory definition, when so declared, takes precedence over and controls as against all other definitions. Ervin v. Capital Weekly Post, 97 So.2d 465 (Fla. 1957); Greenleaf and Crosby Co. v. Coleman, 158 So. 421 (Fla. 1934). Thus, I am compelled to conclude that in providing a statutory definition of `educational purposes' the Legislature intended to confine or limit the exercise of the school board's authority to matters relating to `the establishment andmaintenance of courses, classes, institutions, and services' in order ` to meet the educational needs of all citizens of thedistrict.' (e.s.) No mention, express or implied, is made of authority to freely exercise governmental powers over personnel matters, whether pertaining to elective or appointive personnel, in the absence of statutory authorization, nor can the above provision be properly construed to expressly or impliedly grant the school board the authority to underwrite the tuition expenses in question to meet the educational needs of the individualsuperintendent of schools. Accordingly, in the absence of judicial construction to the contrary, I am unable to say that the above statutory provisions grant district school boards the authority to extend school funds in payment of postgraduate tuition fees to further the education of a superintendent of schools.
Moreover, s 236.29, F.S., in pertinent part, provides: `The district school fund shall be apportioned, expended and disbursed in the district solely for the support of the public schools of the district as prescribed by law' (e.s.) See also, ss 236.13 and 236.24(1), F.S., setting forth the sources of the district school fund. And see, s 237.02(3), F.S., which requires that expenditures from district and all other funds available for the public school program of any district shall be authorized by law and s 236.13, F.S., which provides that all state funds apportioned to the credit of any district shall be expended under authority of the school board of that district subject to the provisions of law andregulations of the state board. In summary, some express statutory authorization must exist before school funds may be lawfully expended or disbursed for any purpose. I find no provision in the Florida School Code expressly authorizing a district school board to expend district school funds to defray or underwrite the costs of postgraduate tuition fees in furtherance of a superintendent's education.
In addition to all of the above, the payment of tuition fees to further the education of the superintendent would appear to fall within the definition of additional compensation or fringe benefit or perquisite. See, 70 C.J.S. Perquisite p. 685, defining `perquisite' to mean `any profit or pecuniary gain from services beyond the amount fixed as salary or wages'; Black's Law Dictionary 1299 (Rev. ed. 1968) defining `perquisites' as `emoluments or incidential profits attaching to an office or official position, beyond the salary or regular fees'; and cf., s216.011(1)(f), F.S., defining `perquisites' for purposes of that chapter as:
 [t]hose things, or the use thereof, or services of a kind which confer on the officers or employees receiving same some benefit that is in the nature of additional compensation, or which reduces to some extent the normal personal expenses of the officer or employee receiving the same, and shall include, but not be limited to, such things as quarters, subsistence, utilities, laundry services, medical service, use of state-owned vehicles for other than state purposes, servants paid by the state, and other similar things. A perquisite by its very nature is an unauthorized expenditure of public funds for private benefit and, in the absence of absolute clear legislative direction, is prohibited by law. See, AGO 073-148. Express statutory authority must exist before public funds may be used to pay additional compensation, or benefits in any form, over and above salary to public employees. See, AGO 082-60; cf., Voorhees v. City of Miami, 199 So. 313 (Fla. 1940), and State ex rel. Holton v. City of Tampa, 159 So. 292 (Fla. 1934) in regard to statutory authority for pensions and Green v. Galvin, 114 So.2d 187 (1 D.C.A. Fla., 1959) as to annual leave. See also, AGO 041-309, Biennal Report of the Attorney General, 1941-42, p. 245 (payment or allowance to a teacher to help defray his expenses of summer school cannot be considered a disbursement for the support and maintenance of the public free schools, and hence is without authority of law); AGO 045-129, Biennial Report of the Attorney General, 1945-46, p. 379 (free rent of a house or school building constitutes additional compensation to principal or teacher).
The salary for an elected superintendent of schools is set by statute based on the population of his county. See, s 230.303(1), F.S. That statutory provision goes on to provide that `a district school board, by majority vote, may approve a salary in excess of the amount specified herein.' It is therefore true that a district school board may approve a higher salary for the superintendent which would help defray his expenses in attaining a Ph.D., but it is also true that the school board must obey a legislative directive as to how a thing should be done since such a directive is in effect a prohibition against it being done in any other way. Alsop v. Pierce, 19 So.2d 799 (Fla. 1944); Devin v. City of Hollywood, 351 So.2d 1022 (Fla. 1976).
Although not determinative of the instant question, I also wish to note that s 230.303(4)(a), F.S., provides for an additional $2,000 per year special qualification salary for each superintendent of schools who has met the certification requirements established by the Department of Education. The Department of Education, pursuant to the above directive, has established the certification requirements for elected district school superintendents to receive the special qualification salary. See, Rule 6A-1.551, F.A.C. It is worthy to note that said rule at (1)(b)1. provides that `[a] master's or higher level degree from an accredited institution with a major in school administration, school supervision, public administration, business administration, or management may be substituted for the five (5) items required in paragraph (1)(b).' In essence the school board by paying the tuition fees in question would not only be subsidizing the further education of an individual superintendent but would also be partially subsidizing a substitution qualification which will bestow an additional $2,000 special qualification salary on the superintendent which the school board must then also pay.
In summary, unless and until legislatively or judicially determined otherwise, in the absence of statutory authorization therefor, a district school board may not expend school funds in payment of tuition fees for doctoral level courses to further the education of its superintendent.
Sincerely,
Jim Smith, Attorney General
Prepared by: Linda Lettera, Assistant Attorney General