Mr. Michael A. Rider Attorney for the Board of County Commissioners of Glades County Post Office Box 608 Lake Placid, Florida 33852
Dear Mr. Rider:
This is in response to your request for an opinion on substantially the following question:
 DOES THE 1980 AMENDMENT OF s 9(C)(5), ART. XII, STATE CONST., REMOVE THE FIVE PERCENT OR $50,000 CAP ON IN-HOUSE ROAD CONSTRUCTION AND RECONSTRUCTION ESTABLISHED BY s 336.41(3)(b), F.S.?
The second gas tax, originally levied by s 16, Art. IX, State Const. 1885, as amended, was continued by s 9(c), Art. XII, State Const. 1968. See, s 206.41(1), F.S., as amended by s 11, Ch. 83-3, Laws of Florida, which designates the second gas tax as the `constitutional gas tax.' Section 9(c)(5), as amended in 1980, currently provides in pertinent part:
 The board shall remit the proceeds of the `second gas tax' in each county account for use in said county as follows: eighty per cent to the state agency supervising the state road system and twenty per cent to the governing body of the county. The percentage allocated to the county may be increased by general law. The proceeds of the `second gas tax' subject to allocation to the several counties under this paragraph (5) shall be used first, for the payment of obligations pledging revenues allocated pursuant to Article IX, Section 16, of the Constitution of 1885, as amended, and any refundings thereof; second, for the payment of debt service on bonds issued as provided by this paragraph (5) to finance the acquisition and construction of roads as defined by law; and third, for the acquisition and construction of roads and for road maintenance as authorized by law . . . . (e.s.)
The 1980 amendment to s 9(c)(5) added the underscored language quoted above. See, S.J.R. 824, 1980. Prior to the 1980 amendment, this office had stated that s 9(c)(5) did not encompass the repair and maintenance of existing roads. See, e.g., AGO's 79-43 and 79-104. The amendment to s 9(c)(5) thus changed the permitted uses of the surplus second gas tax funds such that those funds may now, when authorized by law, be used for road maintenance as well as for road acquisition and construction. See, AGO 82-55. You inquire as to the effect of this amendment on the provisions of s336.41(3)(b), F.S.
Section 336.41, F.S., as amended by s 37, Ch. 83-3, Laws of Florida, authorizes the county commission to employ labor and provide equipment as may be necessary for the construction and opening of new roads and for the repair and maintenance of any existing roads and bridges, except as provided in subsection (3) of the statute. Subsection (3) provides:
 All construction and reconstruction of roads and bridges, including resurfacing, full scale mineral seal coating, and major bridge and bridge system repairs, to be performed utilizing the proceeds of the 80 percent portion of the surplus of the constitutional gas tax shall be let to contract to the lowest responsible bidder by competitive bid except for:
(a) Construction and maintenance in emergency situations; and
 (b) In addition to emergency work, construction and reconstruction, including resurfacing, mineral seal coating, and bridge repairs, having a total cumulative annual value not to exceed 5 percent of its 80 percent portion of the constitutional gas tax or $50,000, whichever is greater.
for which the county may utilize its own forces. However, if after proper advertising, no bids are received by a county for a specific project, the county may use its own forces to construct the project, notwithstanding the limitation of this subsection. Nothing in this section shall prevent the county fromperforming routine maintenance as authorized by law. (e.s.)
Section 336.41(3), F.S., constitutes a limitation on the power of a county to utilitize county employees and equipment for the construction and reconstruction of roads and bridges paid from the proceeds of the 80 percent portion of the surplus of the constitutional gas tax; it does not, however, either levy the constitutional gas tax or prescribe its disposition or distribution. See, s 206.47(7), F.S., as amended by s 17, Ch. 83-3, Laws of Florida, which provides that the gas tax funds credited to each county shall first be distributed to meet the debt service requirements, if any, of the s 16, Art. IX debt assumed or refunded by the State Board of Administration payable from the constitutional gas tax; the remaining gas tax funds credited to each county are surplus gas tax funds and shall be divided 80 percent to the Department of Transportation and 20 percent to the board of county commissioners of the county for the acquisition and construction of roads. And see, s 206.47(9), F.S., as amended, stating that the State Board of Administration in each fiscal year is to distribute the 80 percent surplus gas tax allocated to each county to the debt service requirements of each bond issue pledging the 80 percent surplus accruing to that county under s 16, Art. IX, State Const. 1885; the remaining 80 percent surplus gas tax funds are to be advanced monthly, to the extent practicable, to the Department of Transportation for use in the county.
Section 336.41(3), F.S., does require that the construction and reconstruction of roads and bridges paid from such funds be let by competitive bid except in certain enumerated circumstances. The statute refers to construction and reconstruction; routine maintenance is expressly excluded from the operation of the statute. See, s 334.03(25), F.S., which defines `routine maintenance' for purposes of the Florida Transportation Code, Chs. 334-339 and 341, F.S., unless the context clearly indicates otherwise, to mean `[p]avement patching, shoulder repair, cleaning and repair of drainage ditches and structures, mowing, bridge inspection and maintenance, pavement striping, litter cleanup, and such other similar activities of a minor scope as are necessary to maintain a safe and efficient transportation system.' Section336.41(3), however, includes within the terms `construction' and `reconstruction' such activities as resurfacing, full scale mineral seal coating, and major bridge and bridge system repairs. Compare, s 334.03(26), F.S., which defines `periodic maintenance' as
 Activities which are large in scope and require a major work effort to restore deteriorated components of the transportation system to a safe and serviceable condition, including, but not limited to, the repair of large bridge structures, major repairs to bridges and bridge systems, and the mineral sealing of lengthly sections of roadway. Within the meaning of s. 9, Art. XII of the State Constitution, major resurfacing, widening, and reconstruction of roads shall be considered `construction.' (e.s.)
Such activities specified in s 336.41(3), F.S., even though generally falling within the definition of `periodic maintenance' provided in s 334.03(26), would thus be subject to the limitations and restrictions of s 336.41(3). Cf., Ervin v. Capital Weekly Post, Inc., 97 So.2d 464 (Fla. 1957); Richard Bertram Co. v. Green, 132 So.2d 24 (3 D.C.A. Fla., 1961) (where statute contains a definition of a word or phrase, that meaning must be ascribed to the word or phrase whenever repeated in the same statute unless a contrary intent clearly appears). Whether a particular project, however, constitutes `routine maintenance' and thus falls outside the scope of s 336.41 or is `construction' or `reconstruction' as those terms are used in s 336.41(3) or as defined by s 334.03(26) is a mixed question or law and fact which must be determined on a case by case basis.
Prior to the adoption of the 1980 amendment to s 9(c)(5), Art. XII, State Const., this office had considered the relationship of s 336.41, F.S., to s 9(c)(5). This office concluded that the statute did not place any limitations on the use of the surplus second gas tax funds and did not alter the provisions of s 9(c)(5) which at that time limited the use of surplus second gas tax revenues to construction of roads within the county road system. While s 9(c)(5), Art. XII, State Const., as amended, now expressly provides that surplus second gas tax proceeds may be used for the construction and maintenance of roads as provided by law, the 1980 amendment to this constitutional provision did not purport to amend or modify and existing statutory provision. Section336.41(3) operates as a limitation on the power of a county to utilize county employees and equipment for road and bridge construction and reconstruction when such road and bridge work is funded by the 80 percent portion of the surplus of the constitutional gas tax. Its provisions would not appear to be affected by the 1980 amendment to s 9(c)(5), Art. XII, State Const., and thus the limitations contained therein placing a 5 percent or $50,000 cap on in-house road and bridge construction and reconstruction without competitive bids is still, in my opinion, in full force and effect. It should be noted, however, that s 336.41(3) constitutes a limitation on the use of the 80 percent portion of the surplus of the constitutional gas tax; it does not apply to or otherwise control the use of other revenues by the county. Any limitation on the use of other state or local tax revenues for road maintenance must therefore be found elsewhere in the statutes.
Accordingly, I am of the opinion that the 1980 amendment of s 9(c)(5), Art. XII, State Const., did not affect the limitations contained in s 336.41(3), F.S., on in-house road and bridge construction and reconstruction by a county paid from the 80 percent portion of the surplus constitutional gas tax, and the 5 percent or $50,000 cap on in-house road and bridge construction and reconstruction contained in s 336.41(3)(b) remains in full force and effect. Routine maintenance as that term is defined in s334.03(25), however, is not subject to the limitations of s336.41(3) and may be performed by a county utilizing its own equipment and employees.
Sincerely,
Jim Smith, Attorney General
Prepared by: Joslyn Wilson, Assistant Attorney General